**AMERICAN LIBRARY ASSOCIATION, et al., Appellants/Cross–Appellees,**

**v.**

**William P. BARR, Attorney General of the United States, et al., Appellees/Cross–Appellants.**

Nos. 89–5216, 89–5232.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 24, 1990.

Decided Feb. 19, 1992.

**1180**

D.C., were on the brief, for appellants in No. 89–5232 and appellees in No. 89–5216.

Jacob M. Lewis, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Barbara L. Herwig, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees in No. 89–5216 and appellants in No. 89–5232.

R. Bruce Rich, New York City, was on the brief, for amicus curiae Ass'n of American Publishers, Inc., in No. 89–5216, urging that this court issue preliminary injunctive relief against enforcement of the use forfeiture provisions of sections 1467 and 2253 as adopted in the Child Protection and Obscenity Enforcement Act.

Charles B. Ruttenberg, James P. Mercurio and John T. Mitchell, Washington, D.C., were on the brief, for amicus curiae Video Software Dealers Ass'n in No. 89–5216 and 89–5232, urging that the relief sought by appellants in this action should be granted.

Robert T. Page, Denver, Colo., was on the brief, for amicus curiae American Sunbathing Ass'n, Inc. in both cases urging that the relief sought by the appellants, American Library Ass'n, et al., be granted.

James P. Mueller was on the brief, for amicus curiae Children's Legal Foundation in No. 89–5232, urging that the district court's decision invalidating the record-keeping provisions and the forfeiture provision, in part, of the Child Protection and Obscenity Enforcement Act should be reversed.

Before WALD and RANDOLPH, Circuit Judges, and THOMAS,* Circuit Justice.

Opinion for the court filed by Circuit Judge RANDOLPH.

Opinion, dissenting in part, filed by Circuit Judge WALD.

RANDOLPH, Circuit Judge:

The American Library Association, the Freedom to Read Foundation, the American Society of Magazine Editors, the Amer-

David W. Ogden, with whom Bruce J. Ennis and Ann M. Kappler, Washington,

---

* Justice Thomas was a judge of this court when this case was briefed and argued, and is a designated Circuit Justice of this Circuit on the date of this decision. *See* 28 U.S.C. §§ 42, 43(b).

ican Society of Magazine Photographers, the Council for Periodical Distributors Associations, Inc., the International Periodical Distributors Association, Inc., the Magazine Publishers of America, the Satellite Broadcasting and Communications Associations of America, and the American Booksellers Association, Inc. joined together in a suit against the Attorney General and other federal officials responsible for enforcing the Child Protection and Obscenity Act of 1988, Pub.L. No. 100–690, 102 Stat. 4181, 4485–4503. The membership of these nine organizations is comprised of librarians and libraries, editors and publishers of periodicals, freelance photographers, magazine and book distributors, producers of video material, and companies involved in satellite broadcasting of video signals to home receiving units. Shortly after the 1988 Act became law they challenged the Act on its face and sought an injunction and a judgment declaring its recordkeeping and forfeiture provisions to be unconstitutional, in violation of the First Amendment to the Constitution. After the district court's decision, while these cross-appeals were pending, Congress amended the recordkeeping section. The parties have suggested, through supplemental briefs, that this aspect of the case is therefore moot. They disagree about what relief should follow. In addition to this remedial question, the case continues to present issues concerning the constitutionality of the 1988 Act's civil and criminal forfeiture provisions and the justiciability of plaintiffs' claims relating to those provisions.

I

A

Federal legislative efforts to protect children from sexual exploitation are of fairly recent origin. Using children in sexually explicit productions became a federal criminal offense on February 6, 1978, the effective date of the Protection of Children Against Sexual Exploitation Act of 1977,

Pub.L. No. 95–225, 92 Stat. 7 (1978). In an effort to eliminate the "highly organized, multimillion dollar industries" involved in child pornography (S.REP. NO. 438, 95th Cong., 1st Sess. 5 (1977)), Congress added three sections to the federal criminal code. The first section, now 18 U.S.C. § 2251, prohibited the use of minors in "sexually explicit" productions, and prohibited parents and guardians from allowing their children to be so used. The second section, now 18 U.S.C. § 2252, made it a federal criminal offense to transport, ship or receive in interstate commerce for the purpose of selling, any "obscene visual or print medium" if its production involved the use of a minor engaging in sexually explicit conduct. Both of these offenses were punishable by a maximum of 10 years' imprisonment and a fine of $10,000. The third section, now 18 U.S.C. § 2256, as amended, contained definitions. "Minor" meant anyone under the age of sixteen years. "Producing" meant manufacturing or issuing "for pecuniary profit." "Sexually explicit conduct" comprehended five categories of activity: sexual intercourse, bestiality, masturbation, sado-masochistic abuse, and "lewd" exhibition of the genitals or pubic area. 92 Stat. 8 (1978), formerly 18 U.S.C. § 2253(2)(A)–(E).

In 1982, the Supreme Court decided *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113. The Court sustained a New York criminal law forbidding persons from producing or distributing any works containing a visual depiction of a child's "sexual conduct," which the state law defined in terms nearly identical to those in the federal legislation just described. 458 U.S. at 750–51, 102 S.Ct. at 3351. Works visually depicting such sexual conduct by children are not, the Court held, protected speech under the First Amendment. The Court recognized a significant constitutional difference between child pornography and obscenity as defined in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973).[1]

---

1. Under *Miller,* the "basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest ...; (b) whether the work depicts or describes, in a

Obscenity does not receive First Amendment protection because of its presumed effect on the audience. *See Roth v. United States,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). Child pornography is unprotected because of its devastating and lasting effect on the children who appear in it. 458 U.S. at 756–57, 102 S.Ct. at 3354.

Relying on *Ferber,* Congress expanded the 1977 Act by prohibiting the distribution of material depicting sexual activity by children whether or not the material was "obscene." Child Protection Act of 1984, Pub.L. No. 98–292, 98 Stat. 204. The 1984 Act increased the maximum fines tenfold, redefined minor to mean anyone under the age of eighteen, replaced the word "lewd" with the word "lascivious" in the definition of sexually explicit conduct, and struck the condition making child pornography a criminal offense only when engaged in for "pecuniary profit."

The 1984 Act also added two provisions concerning forfeiture, one criminal, the other civil. Persons convicted of a child pornography offense were required to forfeit their interest in property constituting or derived from the gross proceeds obtained from the offense, and "any property used, or intended to be used, to commit such offense." 98 Stat. 205 (1984), 18 U.S.C. § 2253(a)(2). The Act authorized civil forfeiture, pursuant to the customs laws, of the same items and of the visual depictions produced, shipped, transported or received in violation of the federal child pornography laws. 98 Stat. 205–206 (1984), 18 U.S.C. § 2254.

### B

In 1988, on the recommendation of the Attorney General's Commission on Pornography (*see* 1 ATTORNEY GENERAL'S COMMISSION ON PORNOGRAPHY, FINAL REPORT 595, 618 (1986)), Congress passed the Child Protection and Obscenity Enforcement Act challenged in this case. The main innovation of the 1988 Act was

patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks

its recordkeeping requirement. Despite the federal criminal laws in effect since 1978, child pornography had remained a serious national problem. The Commission found that producers, catering to the child pornography market, often used very young-looking performers in order to give the viewer the impression they were minors. FINAL REPORT, *supra,* at 618. Except in the most obvious instances, no one could be certain whether the performers really were under the age of eighteen. That not only hindered prosecution of child pornography offenses but also provided an excuse to those in the distribution chain, who could profess ignorance that they were actually dealing in sexual materials involving children. Producers too could escape the laws' sanction by claiming they were misled about the performer's age or did not know the performer's true identity.

In order to facilitate enforcement of the federal criminal laws aimed at child pornography, Congress compelled producers of sexually explicit images to educate themselves—and others—about the ages of individuals appearing in the productions. The 1988 Act required all persons producing material containing visual depictions made after February 6, 1978, showing actual explicit sexual activity to determine the age of the performers, to maintain records containing this information, and to affix to each copy of the material a statement about where these records could be found. 18 U.S.C. § 2257. In criminal prosecutions the records could not be used, but failure to comply with these recordkeeping rules gave rise to a rebuttable presumption that the performers were under the age of eighteen. 18 U.S.C. § 2257(d)(3), *repealed by* Child Protection Restoration and Penalties Enhancement Act of 1990, Pub.L. No. 101–647, § 311, 104 Stat. 4789, 4816 (codified at 18 U.S.C. § 2257(e)). Producers included not only original creators but also those who duplicated, reproduced or reissued the sexually explicit material. 18 U.S.C. § 2257(g)(3), *amended by* Pub.L. No. 101–

serious literary, artistic, political, or scientific value." 413 U.S. at 24, 93 S.Ct. at 2615.

647, § 311, 104 Stat. 4816 (codified at 18 U.S.C. § 2257(h)(3)).

The 1988 Act also replaced the 1984 Act's criminal forfeiture provision with a new section, now 18 U.S.C. § 2253,[2] modeled after the Comprehensive Forfeiture Act of 1984, Pub.L. No. 98–473, 98 Stat. 2040, which applies to racketeering (18 U.S.C. § 1963) and continuing criminal enterprise offenses (21 U.S.C. § 853). *See Caplin & Drysdale v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). Section 2253 authorizes the forfeiture, after conviction of a child pornography offense under 18 U.S.C. §§ 2251, 2251A or 2252, of three types of property: materials depicting sexual conduct, gross profits traceable to the offense, and property used to commit the offense. Section 2253 also permits seizure, before trial, of property that would be forfeited upon con-

**2.** The portions of 18 U.S.C. § 2253 pertinent to this case are:

(a) *Property Subject to Criminal Forfeiture.*—A person who is convicted of an offense under this chapter involving a visual depiction described in sections 2251, 2251A, or 2252 of this chapter shall forfeit to the United States such person's interest in—

(1) any visual depiction described in sections 2251, 2251A, or 2252 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;

(2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

(3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

. . . .

(c) *Protective Orders.*—(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—

(A) Upon the filing of an indictment or information charging a violation of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered;

except that an order entered pursuant to subparagraph (B) shall be effective for not more than 90 days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

(2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than 10 days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

(3) The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

(d) *Warrant of Seizure.*—The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (c) of this section may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

(e) *Order of Forfeiture.*—The court shall order forfeiture of property referred to in subsection (a) if the trier of fact determines, beyond a reasonable doubt, that such property is subject to forfeiture.

. . . .

**1184**

viction. The district court is authorized, if the government satisfies certain conditions, to issue an order preserving the property's availability for forfeiture after trial. 18 U.S.C. § 2253(c). Section 2253(d) empowers the district court to issue a warrant of seizure for potentially forfeitable property if the court determines that the procedures authorized under section 2253(c) would not be sufficient to protect the property.

The 1988 Act also added 18 U.S.C. § 1467, a criminal forfeiture section applicable to the obscenity offenses set forth in 18 U.S.C. §§ 1461–1465. Section 1467 is basically the same as section 2253 with one notable exception regarding the property subject to forfeiture. While the obscenity offender, like the child pornographer, must forfeit the offending materials and property derived from the gross proceeds ob-

tained from the offense (18 U.S.C. § 1467(a)(1) & (2)), forfeiture of property used to commit the offense is subject to "the court's discretion" (18 U.S.C. § 1467(e)(2)). In determining whether to order forfeiture of property used to commit or promote the obscenity offense, the district court is to take "into consideration the nature, scope, and proportionality of the use of the property in the offense." 18 U.S.C. § 1467(a)(3).

The civil forfeiture section of the 1988 Act, 18 U.S.C. § 2254, replaced the comparable provision in the 1984 Act.[3] Unlike the criminal forfeiture sections, section 2254 pertains only to child pornography and does not require a criminal prosecution as a predicate for pretrial seizure or a criminal conviction as a predicate for forfei-

---

**3.** The portions of 18 U.S.C. § 2254 pertinent to this case are:

(a) *Property Subject to Civil Forfeiture.*—The following property shall be subject to forfeiture by the United States:

(1) Any visual depiction described in sections 2251, 2251A, or 2252 of this chapter, or any book, magazine, periodical, film, videotape or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of this chapter.

(2) Any property, real or personal, used or intended to be used to commit or to promote the commission of an offense under this chapter involving a visual depiction described in sections 2251, 2251A, or 2252 of this chapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

(3) Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from a violation of this chapter involving a visual depiction described in sections 2251, 2251A, or 2252 of this chapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

(b) *Seizure Pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims.*— Any property subject to forfeiture to the United States under this section may be seized by the Attorney General, the Secretary of the Treasury, or the United States Postal Service upon process issued pursuant to the Supplemental Rules for

Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when the seizure is pursuant to a search under a search warrant or incident to an arrest. The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.

. . . .

(d) *Other Laws and Proceedings Applicable.*— All provisions of the customs laws relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws, the disposition of such property or the proceeds from the sale thereof, the remission or mitigation of such forfeitures, and the compromise of claims, shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under this section, insofar as applicable and not inconsistent with the provisions of this section, except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this section by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, the Secretary of the Treasury, or the Postal Service, except to the extent that such duties arise from seizures and forfeitures affected by any customs officer.

(e) Sections 1606, 1613, 1614, 1617, and 1618 of title 19, United States Code, shall not apply with respect to any visual depiction or any matter containing a visual depiction subject to forfeiture under subsection (a)(1) of this section.

. . . .

ture. It subjects the same three categories of property to forfeiture as section 2253, its criminal counterpart. Property used to commit the child pornography offense or property obtained through the offense is not, however, subject to forfeiture if the owner did not know of or consent to the acts constituting the violation. Seizures and forfeitures of property under section 2254 are governed, with certain exceptions, by the "customs laws relating to the seizure, summary and judicial forfeiture ... insofar as applicable" (18 U.S.C. § 2254(d)). Process for seizure may be issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims. The government may request warrants of seizure in the same manner as it seeks search warrants under the Federal Rules of Criminal Procedure. 18 U.S.C. § 2254(b).

### C

The district court, having before it the pleadings and several affidavits attesting to the "chilling effect" experienced by the affiants, decided the case on cross-motions for summary judgment. *American Library Ass'n v. Thornburgh*, 713 F.Supp. 469 (D.D.C.1989). The court found the recordkeeping provisions unconstitutional, in violation of the First Amendment and the Due Process Clause of the Fifth Amendment, and enjoined the defendants from enforcing them. The court also declared certain aspects of the forfeiture provisions unconstitutional or in need of a limiting construction, which the court supplied. The Attorney General, who was required to issue "appropriate regulations to carry out this section," 18 U.S.C. § 2257(f), had promulgated regulations with an effective date of May 17, 1989, *see* 54 Fed.Reg. 18,907 (1989). The district court enjoined operation of the regulations one day earlier, on May 16, 1989.

The recordkeeping provisions were unconstitutional, the court held, because they burdened "too heavily" the right to produce material protected by the First Amendment, and because they were not "narrowly tailored" to ban only child pornography. 713 F.Supp. at 477. The Act's

broad definition of "producer" had the effect of including many companies and individuals who had no connection with the performers, and the application of the recordkeeping requirements to all productions containing visual images of anyone of any age engaging in sexually explicit conduct, led the district court to conclude that much constitutionally protected "erotic" material would be suppressed through self-censorship. *Id.* at 479. The court also believed that the enforcement mechanism for a producer's failure to keep records—a rebuttable presumption in a criminal prosecution that the performers were minors—violated the due process clause "because of the serious potential for convicting persons who have not engaged in child pornography." *Id.* at 481.

As to the forfeiture and pretrial seizure provisions, the court first determined that plaintiffs' constitutional challenges were ripe despite the fact that the "provisions have not been enforced against the plaintiffs and none can seriously argue that they are in imminent danger of having material seized." 713 F.Supp. at 482. The apparent basis for the court's ruling was that these were large organizations claiming they were "significantly affected by the threat of the forfeiture provisions." *Id.*

On the merits, the court held the civil forfeiture provision (18 U.S.C. § 2254(b) & (d)) unconstitutional and enjoined the defendants from enforcing the provisions "unless there has been a prior adversarial proceeding." 713 F.Supp. at 485. In so ruling, the court did not distinguish between seizure or forfeiture of expressive materials and the property used to produce them. The First Amendment's requirement of a prior adversary proceeding, the court held, applied to both categories of property. *Id.* at 484–85 n. 19.

With respect to criminal forfeiture, the court ruled that pre-conviction seizures of expressive materials and property used to produce them, and pretrial restraining orders and injunctions would violate the First Amendment unless preceded by an adversary hearing. The court therefore enjoined

the defendants "from enforcing 18 U.S.C. § 1467(c) & (d) and 18 U.S.C. § 2253(c) & (d) unless there has been a prior adversarial proceeding." 713 F.Supp. at 485.

The court viewed plaintiffs' challenge to the post-conviction forfeiture provisions as related not to the offending materials, but to property used in committing the obscenity or child pornography offense and, it appears, to property traceable to the proceeds obtained from commission of the offense, 18 U.S.C. §§ 1467(a)(2) & (3) and 2253(a)(2) & (3). 713 F.Supp. at 485–86. The court found that the forfeiture provisions regarding such property were not "as a whole facially unconstitutional," but held that "post-conviction forfeiture may be ordered only when there has been a 'pattern' of activity." *Id.* at 488. The court so ruled because imposing the "sweeping forfeiture provisions on persons or business that have committed a single violation would both unnecessarily chill free speech." *Id.*[4]

Both sides have appealed. Plaintiffs are dissatisfied with the district court's refusal to strike down the challenged portions of the post-conviction forfeiture provisions in their entirety. The government, as we shall refer to the defendants, maintains that none of plaintiffs' claims are justiciable but that if they are, the district court erred in finding the recordkeeping and forfeiture provisions to be in violation of the First Amendment.

## II

On November 29, 1990, after oral argument in this case, the President signed into law the Child Protection Restoration and Penalties Enhancement Act of 1990 ("Restoration Act"), enacted as Title III of the Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4808. The Restoration Act was designed to "correct[ ] the record keeping provisions of the Child Pornography and Obscenity Enforcement Act so that it will comply with a U.S. district court's decision in the case of American Library Association versus Thornburgh." 136 CONG. REC. S9029 (daily ed. June 28, 1990) (statement of Sen. Thurmond).

■ Enactment of the Restoration Act mooted the question whether the recordkeeping provisions of the Child Protection Act are constitutional.[5] The "rebuttable presumption," which the district court found unconstitutional (713 F.Supp. at 481), has been eliminated. The scope and burden of the recordkeeping requirements, which the district court viewed as infringing upon First Amendment rights (*id.* at 477), have been significantly altered. The government's appeal from these rulings must therefore be dismissed.

■ Plaintiffs urge us not to take the additional step of vacating the portion of the district court's judgment holding the recordkeeping provision unconstitutional. Under the rule of *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–107, 95 L.Ed. 36 (1950), however, it is "the duty of the appellate court" to vacate a lower court's judgment that has become moot on appeal and "remand with a direction to dismiss." *See Deakins v. Monaghan,* 484 U.S. 193, 200, 108 S.Ct. 523, 528, 98 L.Ed.2d 529 (1988); *United States Dep't of the Treasury v. Galioto,* 477 U.S.

---

**4.** The court rejected plaintiffs' challenge to 18 U.S.C. § 1467(j), which authorizes the forfeiture of property without regard to its location, and interpreted 18 U.S.C. §§ 1467(g) and 2253(g) to permit a defendant subject to a forfeiture order to obtain a stay of the order pending appeal. 713 F.Supp. at 487–88. These rulings are not challenged on appeal.

**5.** The Restoration Act amended § 2257's recordkeeping requirements in four important respects. It clarified the definition of "produces" to exclude "mere distribution or any other activity which does not involve hiring, contracting for managing, or otherwise arranging for the participation of the performers depicted." Res-

toration Act, § 311, 104 Stat. 4816 (1990) (codified at 18 U.S.C. § 2257(h)(3)). It narrowed the definition of "actual sexually explicit conduct" to exclude "lascivious exhibition of the genitals or pubic area." *Id.* (codified at 18 U.S.C. § 2257(h)(1)). The Restoration Act required recordkeeping only of those images made after November 1, 1990. *Id.* § 301(b), 104 Stat. 4816 (1990) (amending 18 U.S.C. 2257(a)(1)) and it eliminated the presumption of minority for noncompliance with the recordkeeping provisions, and provided penalties of fines and imprisonment. *Id.* § 311, 104 Stat. 4817 (1990) (adding 18 U.S.C. § 2257(i)).

556, 560, 106 S.Ct. 2683, 2685, 91 L.Ed.2d 459 (1986). It is true that we have departed from the *Munsingwear* rule when the party who lost below deliberately aborted appellate review while the appeal was pending. *United States v. Garde*, 848 F.2d 1307, 1311 (D.C.Cir.1988); *Center for Science in the Public Interest v. Regan*, 727 F.2d 1161, 1166 (D.C.Cir.1984); *see also In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299 (7th Cir.1988); *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720 (9th Cir.1982). Our purpose in each such case was to prevent the losing party from manipulating the appellate process in order to gain an undue advantage. We have also refused to vacate the decision of a panel of this court when the parties have settled the case while a petition for a writ of certiorari was pending. *See In re United States*, 927 F.2d 626 (D.C.Cir.1991). Our purpose there was to prevent our decision from becoming a bargaining chip in the settlement process. The situation here is far different. Congress rendered the case moot by passing legislation designed to repair what may have been a constitutionally defective statute. Congress' action represents responsible lawmaking, not manipulation of the judicial process. In these circumstances, our appellate duty under the rule of *Munsingwear* is certain. *See Bowen v. Kizer*, 485 U.S. 386, 108 S.Ct. 1200, 99 L.Ed.2d 402 (1988) (per curiam); *Clarke v. United States*, 915 F.2d 699, 707 (D.C.Cir.1990) (en banc). We therefore vacate the portion of the court's judgment concerning the 1988 Act's recordkeeping provisions and remand the case with instructions to dismiss the corresponding portion of plaintiffs' complaint.

### III

The remaining issues concern plaintiffs' challenge to the provisions concerning civil and criminal forfeiture triggered by child pornography offenses, and the section authorizing criminal forfeiture relating to obscenity offenses. Plaintiffs raise a variety of claims based upon their reading of the provisions. The government disputes some of plaintiffs' interpretations and accepts others, arguing that the provisions are constitutional. The government's overriding point, though, is that the judicial power extends to none of these claims. We agree.

Plaintiffs and their members are not the targets of the provisions they attack. The government has not threatened them with enforcement. Their activities, as they have described them, would not bring them within the ambit of the statutes. No facts concerning their speech-related activities limit the context of the provisions they wish us to consider. Everything is presented in great abstraction. They have combed the statutes and found many sections objectionable. They build their arguments on hypothetical factual situations and invite us to decide the case on the same bases. They ask us to envision vast "speech enterprises" crumbling in the wake of forfeitures ordered in criminal and civil proceedings and to imagine "speech-facilitating" property being seized without prior hearings. What particular criminal activities might lead to these consequences they do not specify. What particular property might be involved they only guess. For these reasons and others discussed later, plaintiffs encounter two obstacles to judicial review, the first stemming from their status, the second from the nature of their constitutional claims, both of which separately and in combination render this case nonjusticiable.

### A

■ We shall begin by considering plaintiffs' attack on the post-conviction forfeiture of property authorized by 18 U.S.C. § 1467 (obscenity) and 18 U.S.C. § 2253 (child pornography). As we have indicated, persons convicted of federal obscenity or child pornography offenses must forfeit three categories of property. The first consists of the offending materials. 18 U.S.C. §§ 1467(a)(1), 2253(a)(1).[6] Second is

---

**6.** When the predicate offense is child pornography, visual depictions of children engaged in

sexual intercourse, bestiality, masturbation or lascivious exhibition of the genitals or pubic

"any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense." 18 U.S.C. §§ 1467(a)(2), 2253(a)(2). Third is "any property, real or personal, used or intended to be used to commit or to promote the commission of such [obscenity or child pornography] offense" (18 U.S.C. §§ 1467(a)(3) & 2253(a)(3)). At least in this court, plaintiffs have confined their attack to the third category of forfeitable property.[7]

"Use" forfeiture can occur only after prosecution and conviction for the underlying obscenity or child pornography offense. If we credit plaintiffs' complaint, none of their members will ever experience this sanction. The complaint alleges that plaintiffs and their members "oppose child pornography," do not deal in it and do not "knowingly" publish or distribute obscene material. Complaint ¶¶ 72, 78, 83. Neither plaintiffs nor, so far as appears, their members have ever been prosecuted or threatened with prosecution under the 1988 Act or the similar federal statutes that had been in effect since 1978. There is no indication that any of them forfeited any property to the United States pursuant to the 1984 Act's comparable criminal or civil forfeiture provisions. Plaintiffs are therefore challenging these provisions on their face prior to any enforcement against them, which may never occur, and prior to application of the provisions to anyone who has allegedly committed the underlying criminal acts.

The district court nevertheless ruled on plaintiffs' pre-enforcement facial constitutional challenge by requiring that a "pattern" of unlawful activity rather than a single offense be proven before forfeiture can be ordered. By way of explanation, the court said "laws implicating infringements on the First Amendment may be challenged on their face, without any imminent danger of prosecution." 713 F.Supp. at 482. For this proposition the court cited *Dombrowski v. Pfister*, 380 U.S. 479, 85

S.Ct. 1116, 14 L.Ed.2d 22 (1965), a decision "at peril from the very start." Fiss, *Dombrowski*, 86 YALE L.J. 1103, 1116 (1977). The court should have considered (but did not) the Supreme Court's later restrictions of the broad implications of *Dombrowski*, notably in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Writing for the Court in *Younger*, Justice Black warned that courts passing on the constitutionality of statutes on their face are acting "fundamentally at odds with the function of the federal courts in our constitutional plan." 401 U.S. at 52, 91 S.Ct. at 754. The judiciary's "power and duty to declare laws unconstitutional is in the final analysis its responsibility for resolving concrete disputes brought before the courts for decision." *Id.* Even if the particular suit might satisfy Article III's "case or controversy" requirement, "the speculative and amorphous nature of the required line-by-line analysis of detailed statutes ... ordinarily results in a kind of case that is wholly unsatisfactory for deciding constitutional questions, whichever way they might be decided." 401 U.S. at 53, 91 S.Ct. at 755. That is as true in this case, dealing with a federal statute attacked on its face prior to its enforcement, as it was in *Younger*, which concerned a federal court's injunction against enforcement of a state's law.

Since *Younger*, the Supreme Court has upheld pre-enforcement facial constitutional challenges only in two circumstances. "[T]he plaintiff must demonstrate that the challenged law either 'could never be applied in a valid manner' or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.' " *New York State Club Ass'n v. New York City*, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988), quoting *City Council v. Taxpayers for Vincent*, 466 U.S. 789,

---

area or "any book, magazine, periodical, film, videotape or other matter" containing such visual depictions are subject to forfeiture. 18 U.S.C. §§ 2256, 2253(a)(1).

7. The district court's decision does not appear to be so limited. 713 F.Supp. at 486.

798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984).

Plaintiffs' case falls within neither category. Their main objection to use forfeiture—that this penalty may be disproportionate to the crime—does not even come close to claiming that the provisions "could never be applied in a valid manner." Their complaint, for example, alleges that "the magnitude of the forfeiture penalty dwarfs the economic benefits from dealing in constitutionally protected materials that frankly concern the subject of human sexuality" (Complaint ¶¶ 73, 83); that a "single" conviction would "authorize massive forfeiture" (*id.* ¶ 72); and that such forfeiture "can constitute a corporate death penalty" (*id.* ¶ 74). These contentions, although aimed only at use forfeiture, could apply equally to any type of punishment for these crimes. Whatever the form of the particular "speech enterprise," there will always be individuals responsible for producing or distributing the offending material. Terms of imprisonment imposed on those individuals also could, in plaintiffs' words, constitute a "corporate death penalty." Fines too could dwarf the economic benefits plaintiffs mention. A large corporation might not blink at the prospect of a $250,000 fine (18 U.S.C. § 2251(d)); to a small organization, a fine of that magnitude could spell financial ruin. One might expect that rather than relying on the First Amendment, plaintiffs would have invoked the Eighth, which expressly limits "excessive fines" and "cruel and unusual punishments." Seven members of the Court recently agreed that the "cruel and unusual punishments" clause does include a guarantee of proportionality in sentencing, *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), although three of these Justices viewed the proportionality principle as confined to sentences "grossly disproportionate" to the particular crime. *Id.* 111 S.Ct. at 2702.

Even if plaintiffs are correct that the First Amendment, rather than the Eighth, sets limits on the punishment of those engaging in the crimes of child pornography and obscenity, plaintiffs ignore countless situations in which "use" forfeiture could not possibly be considered out of line. Plaintiffs offer one hypothetical—the forfeiture of an "entire speech enterprise" on the basis of a single violation. But that obviously is far from the only possibility. Use forfeiture may be ordered when the offender has been tried and convicted of multiple offenses in a single prosecution. Or the property forfeited for a single violation may comprise only part of the offender's "business."

If we confined our attention to plaintiffs' hypothetical, their claim still would not qualify as appropriate for judicial resolution. Inherent in plaintiffs' disproportionality argument is a comparison of the severity of the particular offense with the value and importance of the property used to commit it. Their pre-enforcement facial challenge, however, provides no information regarding either factor. Whatever hypotheticals plaintiffs may devise are countered by other, equally plausible possibilities that negate their point. Consider, for instance, a person convicted of forcing a child to have sex while being photographed. The statute authorizes a sentence of 10 years' imprisonment and a $100,000 fine. 18 U.S.C. § 2251(d). An order directing the criminal to forfeit the 35mm camera and related equipment used in the crime is far-removed from the situation plaintiffs envision, even though it would destroy—in plaintiffs' words—this particular "speech enterprise." If the same crime were committed on a yacht or in a mansion it is hardly self-evident that the punishment of forfeiting the yacht or mansion would not fit the crime. The judicial power does not extend to issuing "an opinion advising what the law would be upon a hypothetical state of facts," *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937), yet to decide plaintiffs' disproportionality claim we would have to do just that.

■ With respect to use forfeiture for obscenity offenses, it is just as clear that plaintiffs' proportionality-of-punishment theory does not constitute an attack on the statute in all or even most of its applications. Indeed we have considerable diffi-

culty discerning exactly what plaintiffs find objectionable in this provision. Under 18 U.S.C. § 1467(a)(3), a person must forfeit property used in the commission of the offense only "if the court in its discretion so determines, taking into consideration the nature, scope, and proportionality of the use of the property in the offense." If plaintiffs are correct that there is something constitutionally wrong about destroying an obscenity "enterprise" on the basis of a single violation, we assume district courts confronted with such situations would find that a proper ground upon which to exercise their discretion in favor of the defendants.

Plaintiffs therefore cannot take advantage of the line of cases in which the statute was attacked, prior to its enforcement, on the ground that it "could never be applied in a valid manner." *City Council v. Taxpayers for Vincent*, 466 U.S. at 798, 104 S.Ct. at 2125. Plaintiffs also cannot bring their claim within the overbreadth doctrine, the other circumstance in which the Supreme Court has permitted facial attacks on statutes. *New York State Club Ass'n*, 487 U.S. at 11, 108 S.Ct. at 2233; *Parker v. Levy*, 417 U.S. 733, 759–61, 94 S.Ct. 2547, 2563–64, 41 L.Ed.2d 439 (1974). Derived from *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), the overbreadth doctrine is an exception to ordinary standing requirements because it permits facial challenges to substantially overbroad statutes "even though a more narrowly drawn statute would be valid as applied to the party" before the court. *Taxpayers for Vincent*, 466 U.S. at 799, 104 S.Ct. at 2125; *Schad v. Mount Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). The overbreadth doctrine does not fit this case. The use forfeiture provisions are not overbroad; they apply only with respect to activity unprotected by the First Amendment and properly subject to criminal sanction. *New York v. Ferber*, 458 U.S. at 764, 102 S.Ct. at

3358; *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98 (1990); *Miller v. California*, 413 U.S. at 23, 93 S.Ct. at 2614. They are in that respect no different than any other penalty imposed for such criminal conduct.

Plaintiffs nevertheless argue that their claim is justiciable because the use forfeiture provisions are "prior restraints," in violation of the First Amendment, and thus "could never be applied in a valid manner." *City Council v. Taxpayers for Vincent*, 466 U.S. at 798, 104 S.Ct. at 2125. Whether use forfeiture constituted a restraint on speech, prior or otherwise, would seem to depend on the nature of the property and the circumstances of the offender, about which we have no information in this case. Furthermore, there is nothing "previous" about this sanction, not in the respect *Near v. Minnesota*, 283 U.S. 697, 715, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931), used the term. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975). Forfeiture is a form of punishment, imposed only after the defendant's conviction. To be sure, this punishment might have a restraining effect on the defendant. So would a ten-year prison term. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705–06, 106 S.Ct. 3172, 3176–77, 92 L.Ed.2d 568 (1986).

Plaintiffs ask us to reach the merits of their prior restraint argument and render a decision at odds with those of the Fourth Circuit and the Seventh [8] because otherwise they and their members will be "chilled," because the continued existence of these provisions will cause them to engage in self-censorship. With respect to the child pornography forfeiture provision, their complaint (¶ 83) puts it this way:

> Although none of the plaintiffs or their members ever knowingly publishes or distributes material in violation of the laws against child pornography, each will

---

**8.** The Fourth Circuit in *United States v. Pryba*, 900 F.2d 748, *cert. denied*, — U.S. —, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990), and the Seventh Circuit in *Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, *cert. denied*, — U.S. —, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990), believed that

the First Amendment does not immunize persons from punishment for violating the criminal law in the past simply because those persons might engage in protected speech in the future. Both courts therefore concluded that use forfeiture does not violate the First Amendment.

be injured by section 2253 because, coupled with the record-keeping and statement requirements, that section will cause each plaintiff (or its members) to be chilled from engaging in constitutionally protected speech of a sexually frank nature involving *adults*. Moreover, the plaintiffs, their members, and the members of the public will be injured because other members of the distribution chain—photographers, editors, publishers, programmers, distributors, bookstores, libraries, etc.—will be chilled from distributing, selling, or producing sexually frank constitutionally protected materials plaintiffs themselves might be willing to distribute, sell, or publish, where a presumption of minority might be applicable. The magnitude of the penalty created by section 2253, for each of the plaintiffs and their members, dwarfs the economic benefits of publishing or distributing constitutionally protected materials that deal frankly with the subject of human sexuality.

This is an argument, cast in terms of allegations, and there is reason to question it. Congress' recent amendment of the 1988 Act relieved plaintiffs of the chilling effect they claim to have experienced from the presumption, triggered by a violation of the recordkeeping requirements, that those appearing in the sexually-explicit production are minors. No longer can they claim that the "presumptions created by the record-keeping and statement requirements, together with the sweeping mandatory forfeiture imposed by section 2253 ... create a significant risk of forfeiture of entire businesses even when no person depicted in the materials is a minor." Complaint ¶ 78 (underlining in original). Yet with respect to forfeiture for child pornography, each of the allegations of "chilling effect" is linked to the now-repealed presumption. The supporting affidavits are to the same effect, although one may not be so limited.[9]

Without the presumption, it would be difficult to believe that use forfeiture could itself have any appreciable self-censoring effect of the sort plaintiffs describe. Quite apart from use forfeiture, those who produce, distribute or possess visual depictions of children engaging in explicit sexual conduct do so at considerable risk. Nearly all states have criminal laws banning the production of child pornography; a substantial majority of states also punish those who distribute the products of such criminal activity; and nineteen states outlaw possession of "kiddie-porn." *Ferber*, 458 U.S. at 749, 102 S.Ct. at 3350; *Osborne*, 110 S.Ct. at 1697. For more than a decade, federal law has punished those who use minors to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct" (18 U.S.C. § 2251(a)) or who transport in interstate or foreign commerce such visual depictions (18 U.S.C. § 2252). These offenses are now punishable, in the case of individuals, by a fine of not more than $100,000 or a term of imprisonment of not more than 10 years or both, and in the case of organizations, by a fine of not more than $250,000. 18 U.S.C. §§ 2251(d), 2252(b). The prospect of fines and imprisonment upon criminal prosecution by state and federal authorities would doubtless lead producers and distributors to abstain from dealing in borderline materials. Adding use forfeiture to the punishment for federal child pornography offenses may have some slight incremental deterrent effect. But it is hard to imagine anyone who would willingly risk 10 years of their life to publish lascivious images of nude children, but would refrain if they also would be risking confiscation of their property or the property of the company employing them. In any event, plaintiffs have not identified or described a single film, photograph or other item they or their members have suppressed as a result of section 2253, or the comparable use forfeiture provision in the 1984 Act.

---

**9.** The affidavit of the general counsel of the American Booksellers Association states that "[i]ndependent of, and in combination with, the chilling effect created by [the provision regarding presumption of minority], the forfeiture provisions of the Act are having a concrete, present chilling effect on the distribution of constitutionally protected material by ABA members." Affidavit of Maxwell T. Lillienstein, ¶ 10; Joint Appendix ("J.A.") 127.

Plaintiffs' claim of chilling effect from the use forfeiture provision for obscenity offenses is somewhat different. Their complaint alleges (¶ 72):

Although none of the plaintiffs or their members knowingly publishes or distributes obscene material, each is injured by section 1467. Each plaintiff (or its members) will be chilled from producing or distributing sexually frank constitutionally protected speech because of fear of the potential consequences if a single jury finds one item to be obscene in a particular community, or fear that a magistrate might deem probable cause existed that such item was obscene. A single such conviction would be sufficient under section 1467 to authorize massive forfeiture. A single such finding of probable cause would be sufficient to authorize sweeping and confiscatory pre-trial restraints.

It is important to note what this paragraph does not say. The "chilling effect" allegedly results from the "potential consequences" of conviction. Those "consequences" include not only use forfeiture but also imprisonment, fines and forfeiture of the obscene material and the proceeds of the criminal activity. In other words, the complaint does not allege that use forfeiture standing alone is what chills plaintiffs and their members. *See also* Affidavit of Mark C. Ellison, ¶ 4 (J.A. 70); Affidavit of Maxwell J. Lillienstein, ¶ 6 (J.A. 125); Affidavit of John M. Harrington, ¶ 9 (J.A. 134).

Plaintiffs do assert that their members refrain from producing some visual images—that they are "chilled"—because they are uncertain whether the images would be protected by the First Amendment or considered child pornography or obscenity. But "[t]he mere assertion of some possible self-censorship resulting from a statute is not enough to render an antiobscenity law unconstitutional." *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 60, 109 S.Ct. 916, 926, 103 L.Ed.2d 34 (1989). Enactment of the use forfeiture provisions in 1988 did not in any event cause the uncertainty or whatever "injury" results from it. With respect to child pornography at least, plaintiffs' claim of un-

certainty is overblown. However hazy the line between obscenity and protected speech, the line between eighteen years old and under is not "dim and uncertain" (*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963)). Furthermore, the only visual depictions subject to criminal sanctions as child pornography are those showing "sexually explicit conduct," which is defined in section 2256(2) to include five types of sexual conduct, the first four of which would be readily apparent to anyone. The only possible source of doubt is the last category described in section 2256(2)(E) as "lascivious exhibition of the genitals or pubic area of any person." Plaintiffs stress the imprecision of the word "lascivious." *But see United States v. Wolf*, 890 F.2d 241, 243–47 (10th Cir.1989); *United States v. O'Malley*, 854 F.2d 1085, 1087 (8th Cir.1988); *United States v. Wiegand*, 812 F.2d 1239, 1243–44 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). But there is nothing in the record, no allegation in the complaint and no affidavit, indicating that they or their members produce images of children exhibiting their genitals or pubic areas in a manner that could possibly fit within the statute's description. What they have to say on the topic is to the contrary. *See* Affidavit of Richard Weisgrau, ¶ 3 (J.A. 50); Affidavit of Jessica Brackman, ¶ 2 (J.A. 78). As a result, there is no basis for supposing that any of these plaintiffs have refrained from making, issuing or distributing visual depictions of children in such poses, let alone that they have done so as a result of the criminal forfeiture provision. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990).

On this record, it would therefore be pure speculation to suppose that the use forfeiture provisions, section 1467(a)(3) and section 2253(a)(3), intensified plaintiffs' self-suppression to any appreciable extent. We are left then with nothing more than plaintiffs' conclusory assertions, in their complaint and affidavits, that in view of the uncertainty about what might constitute a child pornography or obscenity of-

fense, they are "chilled" by section 1467(a)(3) and section 2253(a)(3). This brings the case within *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C.Cir.1984) (Scalia, J.), which held that "present deterrence from First Amendment conduct because of the difficulty of determining the application of a regulatory provision to that conduct" will not "by itself support standing." *Id.* at 1380.

After reviewing Supreme Court decisions to determine the significance of "chilling effect," the court found that each case involved a plaintiff who had suffered some "concrete harm (past or immediately threatened) apart from the 'chill' itself." 738 F.2d at 1378. Subjective "chill," the court held, is not enough to constitute injury in fact. *Id.*, citing *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). Rather, a "[c]hilling effect is cited as the *reason* why the governmental imposition is invalid rather than as the *harm* which entitles the plaintiff to challenge it." 738 F.2d at 1378. It follows that whether plaintiffs have standing to challenge the Act's post-conviction use forfeiture provisions depends on how likely it is that the government will attempt to use these provisions against them—that is, on the threat of enforcement—and not on how much the prospect of enforcement worries them.

Unaccountably, neither side has cited *United Presbyterian Church.* We nevertheless consider plaintiffs' contention that two Supreme Court decisions, one rendered before *United Presbyterian Church* and not discussed in the opinion, *Babbitt v. United Farm Workers*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), and one decided later, *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), support a different analysis.

*Babbitt* did not mention a "chilling effect," which is doubtless why *United Presbyterian* did not discuss the decision. In *Babbitt*, the United Farm Workers challenged a state statute prohibiting unions from making "dishonest" statements dur-

ing publicity campaigns aimed at convincing consumers to boycott agricultural products. The union read this as forbidding even inadvertent misstatements. 442 U.S. at 301, 309, 99 S.Ct. at 2310, 2314. The Court viewed unintentional misstatements as "inevitable" in such campaigns, *id.* at 301, 99 S.Ct. at 2310 (quoting *New York Times v. Sullivan*, 376 U.S. 254, 271, 84 S.Ct. 710, 712, 11 L.Ed.2d 686 (1964)), but applied the principle that some false speech must be tolerated to avoid the suppression of "speech that matters." *See New York Times Co. v. Sullivan*, 376 U.S. at 279, 84 S.Ct. 710, 725, 11 L.Ed.2d 686. The Court upheld the union's standing on the basis that the statute, as so interpreted, prohibited the union from engaging in speech arguably protected by the First Amendment (although the Court ultimately held that the district court should have abstained from deciding the constitutionality of the provision pending a state court decision and a possibly limiting construction). 442 U.S. at 302, 99 S.Ct. at 2310. The union in *Babbitt* thus faced "a credible threat" of prosecution because its members inevitably would violate the statute as the union interpreted it. *Id.*

This case bears no resemblance to *Babbitt.* If plaintiffs and their members continue to produce and distribute expressive materials, as they had prior to passage of the 1988 Act, there is no reason to suppose they inevitably will produce child pornography or obscenity and therefore find themselves subjected to use forfeiture. Plaintiffs tell us they will not knowingly do any such thing. Furthermore, unlike *Babbitt*, if plaintiffs did start dealing in child pornography or obscenity, they could not contend that their speech would be "arguably affected with a constitutional interest" (*Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2309).

*American Booksellers* also boots plaintiffs nothing. Plaintiff-booksellers brought a pre-enforcement facial challenge to a state law forbidding any person selling sexually explicit materials from displaying them in a manner that would allow juveniles to "examine and peruse" them. 484 U.S. at 387, 108 S.Ct. at 639. The lower courts had found that the average booksel-

ler could face "significant difficulty" complying with the statute, *id.* at 391, 108 S.Ct. at 641, violation of which was a misdemeanor. *Id.* at 388 n. 2, 108 S.Ct. at 640 n. 2. The Court noted that the "State has not suggested that the newly enacted law will not be enforced," and the Court therefore assumed it would be. *Id.* at 393, 108 S.Ct. at 642. On these facts the Court held that plaintiffs had standing because the statute was "aimed directly" at them—they would be subject to criminal prosecution for noncompliance. *Id.* at 392–93, 108 S.Ct. at 642–43. (As in *Babbitt,* however, the Court refrained from deciding the constitutional issues and, instead, certified the questions presented to the state court for an authoritative interpretation of the law.) Here, as plaintiffs admit, the forfeiture provisions are not "aimed" at them. They are aimed instead at those who produce and distribute child pornography and obscene material.

■■■ We therefore see no reason to deviate from this court's holding in *United Presbyterian* that subjective "chill" alone will not suffice to confer standing on a litigant bringing a pre-enforcement facial challenge to a statute allegedly infringing on the freedom of speech. Subsequent Supreme Court decisions have not altered the state of the law as it stood when the court decided *United Presbyterian.* Today, as then, such a litigant must demonstrate a credible threat of prosecution under a statute that appears to render the litigant's arguably protected speech illegal. *See Renne v. Geary,* — U.S. —, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). Plaintiffs in this case have not met that essential requirement and therefore have failed to assert an injury in fact with respect to their challenge to section 1467(a)(3) and section 2253(a)(3).

Our refusal to review these provisions in the abstract is reinforced by *Fort Wayne Books,* in which the Supreme Court declined to consider petitioner's attack on a

state civil forfeiture statute, even though he had been indicted for distributing obscene materials and therefore was clearly subject to the challenged provision. The Court found the challenge not "ripe" since the state had not yet sought any civil forfeiture, 489 U.S. at 60, 109 S.Ct. at 926, and concluded that "[t]hese claims can only be reviewed when (or if) such remedies are enforced against petitioner." *Id.*

That disposition is all the more appropriate in this case. Unlike *Fort Wayne Books,* the plaintiffs before us have presented nothing to limit the factual context in which we are asked to adjudicate the constitutionality of this legislation. As we have said, their primary theory is that use forfeiture may be disproportionate to the offense. Underlying this theory is the proposition that Congress may punish child pornographers and producers of obscenity only so much, that there is a point where too much speech protected by the First Amendment is lost to justify the imposition of a particular penalty on those who have committed criminal offenses. But we do not conceive it to be a proper exercise of the judicial function in this case to attempt to identify such a point, as the district court did by engrafting on sections 1467(g) and 2253(g) the condition that post-conviction forfeiture may be ordered only when there has been a "pattern" of activity. 713 F.Supp. at 488. "Justiciability," the Supreme Court recently reminded us, "concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne,* 111 S.Ct. at 2338. This portion of plaintiffs' case fails on both scores.

## B

The district court enjoined the defendants from "enforcing 18 U.S.C. § 1467(c) and (d) and 18 U.S.C. § 2253(c) and (d) unless there has been a prior adversarial proceeding." 713 F.Supp. at 485.[10] Both subsections (c) provide that, on the govern-

---

10. Sections 1467(c) (obscenity) and 2253(c) (child pornography) are nearly identical to the pretrial forfeiture provisions for racketeering offenses (18 U.S.C. § 1963(d)) and for continuing criminal enterprise offenses (21 U.S.C.

§ 853(e)(1)). *See Caplin & Drysdale v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989).

ment's application, a district court "may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property ... for forfeiture." If the government applies before indictment, there must be "notice to persons appearing to have an interest in the property and opportunity for a hearing"; the court must determine that the government has a substantial probability of prevailing on the issue of forfeiture, that the order is needed to prevent the property from being destroyed, removed or otherwise rendered unavailable for forfeiture, and that the need to preserve the property for forfeiture outweighs the hardship on the party against whom the order is entered. 18 U.S.C. §§ 1467(c)(1)(B), 2253(c)(1)(B). If the government applies after indictment, the court may issue a protective order to preserve the availability of the property so long as the indictment alleges "that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture" (18 U.S.C. §§ 1467(c)(1)(A), 2253(c)(1)(A)). The government's reply brief (at page 8) suggests that a post-indictment protective order under subsections (c) would issue only after a hearing, but we find no express hearing requirement. *Compare United States v. Monsanto*, 924 F.2d 1186 (2d Cir.1991) (en banc).

The other subsections mentioned in the district court's ruling (18 U.S.C. §§ 1467(d), 2253(d)) permit the government to request a warrant for seizure of forfeitable property in the same manner it requests a search warrant. The court shall issue the warrant if it finds probable cause to believe the property would be subject to forfeiture upon a conviction and determines that an order under subsection (c) would not be "sufficient to assure the availability of the property for forfeiture...."

Plaintiffs' contentions with respect to these provisions differ from their arguments against post-conviction use forfeiture. Here the focus is on the procedural aspects of pretrial orders regarding not only property used in the commission of the offense, but also pornographic materi-

als containing illegal visual depictions of children and obscene matter. As far as pretrial seizures are concerned, plaintiffs describe *Fort Wayne Books*, 489 U.S. at 66–67, 109 S.Ct. at 929–30, as holding that "expressive" materials may not be seized upon an *ex parte* showing of probable cause. *See also New York v. P.J. Video, Inc.*, 475 U.S. 868, 873–75, 106 S.Ct. 1610, 1614–15, 89 L.Ed.2d 871 (1986); *Heller v. New York*, 413 U.S. 483, 492, 93 S.Ct. 2789, 2794, 37 L.Ed.2d 745 (1973). Since sections 1467(d) and 2253(d) appear to allow precisely that, plaintiffs maintain that these provisions violate the First Amendment insofar as they apply to allegedly obscene materials and child pornography. Subsection (c) of both sections is also unconstitutional with respect to expressive materials, they contend, because district courts could issue restraining orders or require performance bonds without prior adversary proceedings to determine that the defendant has committed the predicate offense and that the materials are forfeitable. Plaintiffs see no constitutional difference between expressive material and the property used to produce or distribute it; by their lights, the authorization of warrants to seize "use" property in subsection (d) and the authorization of post-indictment restraining orders and performance bonds with respect to such property in subsection (c) therefore also violates the First Amendment.

### 1.

Again we find none of these claims justiciable. It is useful to begin with plaintiffs' claims relating to expressive materials. Their description of the holding of *Fort Wayne Books* would be accurate if it were qualified to take account of the Court's recognition that "a single copy of a book or film maybe seized and retained for evidentiary purposes based on a finding of probable cause" (489 U.S. at 63, 109 S.Ct. at 927; *see also Heller*, 413 U.S. at 492, 93 S.Ct. at 2794). Plaintiffs may be correct that subsection (d) is so indefensible when it comes to wholesale pretrial seizures of expressive materials that only the occasion is needed to pronounce its doom, or to limit it

through interpretation to seizures for evidentiary purposes. *See Rust v. Sullivan,* — U.S. ——, 111 S.Ct. 1759, 1771, 114 L.Ed.2d 233 (1991). The question remains whether this is the occasion. The government argues it is not and we agree.

The complaint tells us very little regarding why these plaintiffs are entitled to a judicial decision on the constitutionality of sections 1467(d) or 2253(d). Paragraph 72 notes that a single finding of probable cause to believe that one of the plaintiffs was dealing in obscenity "would be sufficient to authorize sweeping and confiscatory pre-trial restraints." Paragraphs 79–81 recite similar possibilities with respect to the child pornography statute, and paragraphs 86–87 do the same for the civil forfeiture statute. These allegations are apparently the basis for plaintiffs' Twelfth Claim for Relief, that the Act fails to provide adequate procedural safeguards in violation of the First and Fifth Amendments (¶ 119).

■ Yet the only allegation that can plausibly be read to refer to the particular circumstances of these plaintiffs is the general claim in one paragraph (¶ 117) that the "forfeiture provisions of sections 1467, 2253 and 2254 impose a severe and undue chilling effect on constitutionally protected speech in violation of the First Amendment to the United States Constitution." We shall assume this claim includes sections 1467(d) or 2253(d) as "forfeiture provisions," although the subsections actually authorize seizure not forfeiture. We shall also assume that the "protected speech" mentioned in this paragraph of the complaint is plaintiffs' or their members'. Even so, their claim is not justiciable.

As to subsections (d), plaintiffs have not alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" and they have not alleged that "there exists a credible threat" that the government would invoke the provisions against them. *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2309. Sections 1467(d) and 2253(d) could pose a danger to plaintiffs and their members only if their speech activities at least

arguably violated the child pornography or obscenity statutes, which they deny, and only if there were some probability the government would invoke the provisions against them, which the government denies. It is telling that subsections (d) do not direct the government to do anything: the government "may request the issuance of a warrant" authorizing the seizure of forfeitable property, which also means it may not. The government represents that it does not seize expressive material except for legitimate evidentiary purposes. That has been the longstanding policy of the Department of Justice, as the Supreme Court pointed out in *Fort Wayne Books,* 489 U.S. at 67 n. 13, 109 S.Ct. at 930 n. 13. *Compare Virginia v. American Booksellers Ass'n,* 484 U.S. at 393, 108 S.Ct. at 642. To be sure, policies can change. But it would be nothing but speculation to suppose that the Department of Justice will change its position in the foreseeable future.

In view of the Justice Department's disclaimer and plaintiffs' unwavering claim that the statutes in no wise apply to their activities, we therefore find that they have failed to demonstrate a "credible threat" that the government will enforce the provisions against them. *Renne,* 111 S.Ct. at 2338–40; *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2308; *accord American Booksellers Ass'n,* 484 U.S. at 383, 108 S.Ct. at 636; *Ohio Civil Rights Comm'n v. Dayton Schools,* 477 U.S. 619, 625–26 n. 1, 106 S.Ct. 2718, 2721–22 n. 1, 91 L.Ed.2d 512 (1986); *id.* at 633 n. 4, 106 S.Ct. at 2726 n. 4 (Stevens, J., concurring in the judgment, joined by Brennan, Marshall & Blackmun, JJ.). Their subjective chill, fear, is not sufficient, *Laird v. Tatum,* 408 U.S. at 13–14, 92 S.Ct. at 2325–26. It is the enforcement of an allegedly unconstitutional statute, "past or immediately threatened," that causes the injury entitling those in the line of fire to seek judicial relief. *United Presbyterian Church,* 738 F.2d at 1378.

■ Much the same is true with respect to plaintiffs' claims that subsections (c) violate the First Amendment when applied to expressive material. We find nothing in

the complaint or in plaintiffs' affidavits to indicate why these particular provisions will be applied to them in the foreseeable future. The difficulty of the questions raised by plaintiffs' challenge to subsections (c), as applied to expressive material, underscores why we should demand a factual setting before resolving those questions. *See Zemel v. Rusk,* 381 U.S. 1, 19–20, 85 S.Ct. 1271, 1282, 14 L.Ed.2d 179 (1965). There is first a question of the meaning of subsections (c). The Attorney General and the other defendants interpret these provisions to mean that court orders preserving "property" for forfeiture would allow those charged with obscenity or child pornography offenses to continue circulating expressive materials. The idea is that in the case of distributors, an order preserving the proceeds of sales of the material ensures the availability of the distributors' total forfeitable assets. *See Alexander v. Thornburgh,* 713 F.Supp. 1278 (D.Minn.1989); *United States v. Pryba,* 674 F.Supp. 1504, 1508 n. 16 (E.D.Va.1987), *aff'd,* 900 F.2d 748 (4th Cir.1990), issuing such orders under the comparable RICO provision, 18 U.S.C. § 1963(d). Plaintiffs disagree. They read subsections (c) as directed to preserving specific forfeitable property—in this instance, books, films, magazines, photographs and the like—rather than total assets. In addition to this problem of statutory interpretation, the validity of any order issued under section 1467(c) or section 2253(c) may turn not only on what the order directs but also on the procedures leading to its issuance. Even if plaintiffs were correct that orders restraining the distribution of expressive material may not issue except after an adversary proceeding, many questions would remain. Should a court require such proceedings, as the district court did here, even though the statute on its face does not, or should the government simply be enjoined from enforcing subsections (c)? This sort of remedial issue recently divided the Second Circuit, sitting *en banc,* in *United States v. Monsanto,* 924 F.2d at 1200, 1203. If prior hearings are required, what must be proved? Do the Federal Rules of Evidence apply? Does the grand jury's finding of probable cause carry any weight and, if so, how much? Must the adversary proceeding always take place before the order, even when there is a clear threat of imminent destruction of the property?

These questions are not appropriate for judicial resolution in this case at the behest of these plaintiffs. Courts cannot make well-informed decisions when legal issues do not arise out of the facts of a real case. Accurately predicting the factual settings in which these statutes could be applied may be impossible. When courts attempt to adjudicate constitutional issues on the basis of such predictions, they risk not only rendering unnecessary opinions about imagined situations that would never have occurred, but also deciding the issues incorrectly. Litigants are therefore simply not entitled to an adjudication of every question they perceive after reading through the text of legislation. Plaintiffs' challenge to the possible application of sections 1467(c) and 2253(c) to expressive material an indictment alleges to be subject to forfeiture is not justiciable.

2.

■ We reach the same conclusion with respect to plaintiffs' claim that sections 1467(c) & (d) and 2253(c) & (d) are unconstitutional insofar as they apply to property used in the commission of child pornography and obscenity offenses. Plaintiffs argue that such "use" property is deserving of the same procedural treatment under the First Amendment as expressive material. In terms of the effect on the freedom of speech, plaintiffs equate restraints on property used to commit these offenses with restraints on speech. That equation may or may not be accurate. The effect of a particular pretrial seizure of property on someone's freedom of speech would depend on the nature of the property seized. Seizure of an automobile used to transport children might have little or no impact on free speech; seizure of a printing press could have a great deal. How far the protection of the First Amendment extends beyond expressive material, if at all, is a novel question, a question that must await

a concrete case for an answer, a case in which these provisions have been enforced or are about to be. *See Renne*, 111 S.Ct. at 2339–40.

As to restraining orders issued under subsections (c) to preserve property, much will also depend on the exact terms of the order. We suppose an order could, as plaintiffs put it, constitute "an unconstitutional, unfettered licensing scheme" (Appellants' Joint Response Brief at 48). In the land of hypotheticals possibilities abound. But we will not simply presume that the statutes authorize such orders, much less that they compel such orders in every case.

## C

■■■ For the same reasons we refuse to decide the constitutionality of the civil forfeiture provision, 18 U.S.C. § 2254, which applies only to child pornography offenses. It would serve no useful purpose to describe section 2254 in great detail. The provision applies to the same three categories of property as its criminal counterpart. It authorizes the government to seize such property and seek its forfeiture pursuant to the customs laws and the admiralty rules. The district court construed section 2254, in light of Admiralty Rule C(3), to permit a clerk of the court to issue a warrant of seizure *ex parte* upon the government's showing of probable cause to believe the property was subject to forfeiture. 713 F.Supp. at 484. The court also believed that section 2254 violated the First Amendment because it did not guarantee "a quick judicial determination be made as to the legality of the seizure," as the Supreme Court required in *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 367, 91 S.Ct. 1400, 1403, 28 L.Ed.2d 822 (1971). 713 F.Supp. at 485.

As to expressive materials, there is no basis for concluding that plaintiffs, or anyone else for that matter, are under a credible threat that the government will invoke section 2254 to seize expressive materials without a prior judicial determination, in an adversary hearing, that a child pornography offense has been committed. Plaintiffs cannot be chilled by the existence of a statute granting the government authority it will never use. In the district court, the Department of Justice reaffirmed its longstanding policy not to "seek civil forfeiture of books, films, and other first amendment material prior to conviction." Affidavit of Edward S.G. Dennis, Jr., Assistant Attorney General for the Criminal Division, Department of Justice. "[T]his policy would not allow seizure of the above mentioned items prior to trial for the purpose of blocking their distribution or preserving them for later forfeiture...." *Id.*, attached instructions to United States Attorneys, Apr. 12, 1989.

Since plaintiffs do not knowingly produce or distribute child pornography and since the government does not and will not seize such material merely on a showing of probable cause, it is impossible to understand how section 2254—as applied to expressive material—could deter plaintiffs from engaging in protected speech. In fact, we find nothing in the complaint suggesting that the possibility of seizure or forfeiture of expressive material pursuant to section 2254 has caused plaintiffs to engage in self-censorship. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *United Presbyterian Church*, 738 F.2d at 1378. Plaintiffs have not satisfied that requirement.

■■■ In addition to challenging the seizure power conferred on the government by section 2254, plaintiffs also object to the absence of short time limits for judicial determinations of the legality of the government's seizure of expressive material. *See* 713 F.Supp. at 485. The government defends on the basis that, as in *Thirty–Seven Photographs*, 402 U.S. at 373–74, 91 S.Ct. at 1406–07, we could "construe"

section 2254 to require what on its face it does not, and thereby render the section constitutional. Plaintiffs say no such interpretation is permissible in view of *United States v. Eight Thousand Eight Hundred and Fifty Dollars*, 461 U.S. 555, 563 n. 13, 103 S.Ct. 2005, 2011 n. 13, 76 L.Ed.2d 143 (1983). This case does not require us to decide who is right. The government has renounced the authority to seize expressive materials prior to an adversary hearing. We therefore will not offer our advice about what section 2254 and the Constitution might demand in a situation we have no basis for believing will occur.

The balance of plaintiffs' facial challenge to section 2254 concerns property used to commit child pornography offenses. Speculation about what the property may be, how its seizure might affect the freedom of speech of its owner, and whether the First Amendment protects it to the same degree and in the same manner as speech itself, would lead us into the blue yonder. For the same reasons we declined to pass upon plaintiffs' claims that the pretrial procedures in the criminal forfeiture provisions were unconstitutional with respect to such "use" property, we refuse to pass upon the same claims in the context of civil forfeiture.

\* \* \*

The judgment of the district court that 18 U.S.C. § 2257 is unconstitutional is vacated and this portion of the case is remanded with instructions to dismiss plaintiffs' complaint, insofar as it challenged section 2257, as moot. The remaining portion of the court's judgment is vacated and the case remanded with instructions to dismiss the complaint on the ground that plaintiffs' claims are not justiciable.

WALD, Circuit Judge, dissenting in part:

It is axiomatic that Article III of the Constitution commands that federal courts decide only actual "cases or controversies," and not render opinions about "abstract questions." But as the Supreme Court acknowledges, "[t]he difference between an abstract question and a 'case or controversy' is one of degree, ... and is not discernible by any precise test." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). Because I believe the majority erroneously concludes that all of the plaintiffs' challenges to forfeiture provisions of the Child Protection and Obscenity Enforcement Act ("Act") fall on the "abstract question" side of the justiciability line, I respectfully dissent.[1] For the reasons discussed below, I find that the plaintiffs' challenges to the pretrial seizure provisions of the Act are justiciable. Furthermore, I believe that the district court correctly concluded that the sections of the Act that authorize pretrial seizure of expressive material based on an *ex parte* showing of probable cause are unconstitutional. *See American Library Ass'n v. Thornburgh*, 713 F.Supp. 469 (D.D.C.1989). Unlike the district court, however, I would reject the plaintiffs' facial challenge to the section authorizing a pretrial restraining order to preserve assets subject to post-conviction forfeiture.

I. STATUTORY SCHEME

The plaintiffs, major producers and distributors of expressive material, some of which is sexually-oriented, challenge the constitutionality of the two criminal forfeiture sections of the Act that authorize the pretrial seizure and post-conviction forfeiture of the property of persons who produce or distribute obscenity or child pornography. *See* 18 U.S.C. § 1467 (criminal forfeiture for obscenity offenses); *id.* § 2253 (criminal forfeiture for child pornography offenses). In addition, plaintiffs challenge the constitutionality of a third section that authorizes pretrial seizure and civil forfeiture of the property of persons who produce or distribute child pornography. *See* 18 U.S.C. § 2254. All of these statutes authorize the pretrial seizure and

1. I agree with the majority that the passage of the Child Protection Restoration and Penalties Enhancement Act of 1990 renders moot the plaintiffs' challenges to the Act's recordkeeping provisions. I therefore join the section of the majority opinion holding these challenges moot and vacating the district court opinion addressing them.

post-conviction forfeiture of three categories of property: (1) expressive materials that are obscene or contain child pornography (*i.e.,* "contraband forfeiture"), *see* 18 U.S.C. §§ 1467(a)(1), 2253(a)(1), 2254(a)(1); (2) "any property, real or personal, used or intended to be used to commit or to promote the commission of such offense" (*i.e.,* "use forfeiture"), *see* 18 U.S.C. §§ 1467(a)(3), 2253(a)(3), 2254(a)(2); and (3) "any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense" (*i.e.,* "proceeds forfeiture"), *see* 18 U.S.C. §§ 1467(a)(2), 2253(a)(2), 2254(a)(3).

The two criminal statutes authorize the pretrial seizure of this property pursuant to a warrant issued upon a finding of probable cause to believe that, in the event of conviction, the property would be subject to forfeiture. 18 U.S.C. §§ 1467(d), 2253(d). Instead of seizure, the government may also obtain an *ex parte* temporary restraining order or injunction "to preserve the availability of" the property subject to post-conviction forfeiture. 18 U.S.C. §§ 1467(c), 2253(c). After conviction, the criminal statutes authorize the forfeiture of the three types of property described above if the "trier of fact determines, beyond a reasonable doubt, that such property is subject to forfeiture." *Id.* §§ 1467(e)(1), 2253(e).

The civil statute similarly authorizes pretrial seizure and subsequent forfeiture of the three types of property described above, although the procedure is slightly different. The civil statute authorizes pretrial seizure "when the seizure is pursuant to a search under a search warrant or incident to an arrest." 18 U.S.C. § 2254(b). It also authorizes pretrial seizure and subsequent forfeiture pursuant to the customs laws and Admiralty Rules. *Id.* § 2254(b), (d). Thus, as the district court explained, the government may, pursuant to Admiralty Rule C(3), file "an *ex parte* complaint with the clerk of the [district] court, who may in turn issue the warrant without referring the matter to a judge or magistrate." *American Library Ass'n,* 713 F.Supp. at 484. If the value of the merchandise seized does not exceed $500,000,

the government may destroy it unless the owner initiates legal proceedings for its return. *See* 19 U.S.C. §§ 1607–09 (customs laws for seizure and forfeiture); *American Library Ass'n,* 713 F.Supp. at 485. If the value of the merchandise seized is greater than $500,000, the government has five years to initiate a judicial proceeding to determine if it is subject to permanent forfeiture. *See* 19 U.S.C. § 1621; *American Library Ass'n,* 713 F.Supp. at 485.

In this case, the plaintiffs challenge the post-conviction use forfeiture provisions, alleging that they constitute an unlawful prior restraint and that they produce an unconstitutional chill on the first amendment right to publish protected materials. The plaintiffs also challenge the pretrial seizure provisions, claiming that the first amendment prohibits the government from seizing their property before there has been a judicial determination that they are producing or distributing unprotected obscenity or child pornography.

## II. JUSTICIABILITY

To challenge the constitutionality of a statute in federal court, the plaintiffs must allege that the statute will cause them some "threatened or actual injury." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). But it is well-established that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2308 (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)). Thus, plaintiffs who claim that a criminal statute deters the exercise of their constitutional rights need not expose themselves to arrest and prosecution to be entitled to challenge that statute. *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). Instead, they may bring a pre-enforcement challenge to such a statute if there is a "credible threat," not "imaginary or speculative," that the statute will be enforced against them. *See Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2308; *Younger v. Harris,*

401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).

Nevertheless, the majority correctly recognizes that, as a prudential matter, a court may decide that the constitutional questions raised by a statute would be clearer after the statute has been enforced against a particular person and that any harm occasioned by delaying adjudication until the statute has been enforced is outweighed by the interest in avoiding constitutional adjudication. But it is also well-established that prudential concerns of avoiding constitutional adjudication carry substantially less weight in the first amendment context. *See Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 956–57, 104 S.Ct. 2839, 2846–47, 81 L.Ed.2d 786 (1984); *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 634 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). Particularly if the statute may cause the plaintiffs to censor their own speech—"a harm that can be realized even without an actual prosecution"—a court may entertain a pre-enforcement challenge to the statute as long as the "plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them." *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 393, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988); *Sequoia Books,* 901 F.2d at 634.[2]

Applying that test to the facts of this case, I agree that the plaintiffs' challenge to the post-conviction use forfeiture provisions is not ripe for review at this time. The plaintiffs can be subject to post-conviction forfeiture only if they are first convicted of an obscenity or child pornography offense and the trier of fact determines, beyond a reasonable doubt, that their property is subject to forfeiture. In some instances particular plaintiffs might be able to demonstrate that, even before the commencement of an obscenity prosecution, they reasonably fear post-conviction forfeiture. *See, e.g., Sequoia Books,* 901 F.2d at 633–34 (entertaining pre-enforcement challenge to state post-conviction forfeiture statute brought by adult bookstore that had previously been convicted of violations of state obscenity law; even though application of the forfeiture provisions depended "upon at least one further obscenity conviction and the holding of a forfeiture hearing," the bookstore had a "well-founded" fear that the provisions would be enforced against it). But it is difficult to see how *these* plaintiffs can reasonably fear such an eventuality since the record does not indicate that they (or any other producer or distributor of similar materials) have previously been prosecuted or convicted for violating the federal obscenity and child pornography laws and any forfeiture order would have to follow a full-scale trial on all factual and constitutional issues.[3]

---

**2.** It is true, of course, that the Supreme Court in *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), declined to address a pre-enforcement challenge to a post-conviction civil forfeiture statute. The petitioner in *Fort Wayne Books* sought dismissal of an indictment alleging that he had violated the state's Racketeer Influenced and Corrupt Organizations Act ("RICO") by engaging in a pattern of obscenity violations. Although the Court considered his claim that the RICO statute was unconstitutionally vague and that its criminal penalties were so draconian as to create an unconstitutional chilling effect on protected speech, the Court declined to address his claim that the civil forfeiture provisions of the state's Civil Remedies for Racketeering Activity Act ("CRRA") that were available to redress RICO violations were "so severe as to render the RICO statute itself unconstitutional" because the state had not sought to invoke the provisions. *Id.* at 60, 109 S.Ct. at 926. Nevertheless, because the

Court did not criticize or overrule its precedents authorizing pre-enforcement challenges to statutes that infringe upon first amendment rights, I agree with the Seventh Circuit ruling that *Fort Wayne Books* is appropriately limited to its own facts—a request for dismissal of a state RICO prosecution on the ground that the civil penalties of a separate state act that the state might not enforce against petitioner if he were convicted were so severe as to render the RICO statute itself unconstitutional. *See Sequoia Books,* 901 F.2d at 634 n. 7. Comity concerns and the traditional hesitancy of federal courts to interfere with state prosecutions obviously counseled in favor of the Court proceeding cautiously in *Fort Wayne Books.* None of these concerns are implicated in this case.

**3.** I do, however, have problems with the panel's rationale for reaching the same result, *i.e.,* that the plaintiffs have not shown sufficient imminency of harm from post-conviction forfeitures.

On the other hand, I think the plaintiffs' challenges to the pretrial seizure provisions are ripe. As noted above, plaintiffs produce and distribute sexually-oriented materials. Although they believe that none of these sexually-oriented materials are obscene or contain child pornography, they realize that because the line between protected sexually-oriented materials and unprotected obscenity is "dim and uncertain," *see Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963), prosecutors may disagree with their judgment calls. By definition, plaintiffs can be subject to pretrial seizure *before* a court has determined that plaintiffs have produced or distributed child pornography or obscenity. More importantly, the government may obtain a warrant authorizing pretrial seizure of plaintiffs' property based on nothing more than an *ex parte* showing of probable cause to believe the plaintiffs have produced or sold material in violation of the obscenity or child pornography laws. *See* 18 U.S.C. § 2254(b), (d); *id.* § 1467(d); *id.* § 2253(d). Because plaintiffs admit they produce and distribute materials that could possibly be thought to violate the obscenity or child pornography laws,[4] and because the government can seize the plaintiffs' property before there has been a determination, after an adversarial hearing, that the plaintiffs have violated these laws and that their property is subject to forfeiture, I think the plaintiffs' fears of pretrial seizure are reasonable.

In rejecting the challenge to pretrial seizure, the majority relies on several facts, which, in my opinion, do not make plaintiffs' fear of pretrial seizure unreasonable or imaginary. First, the majority notes that the plaintiffs claim that they do not produce or distribute obscenity or child pornography. In addition, they cite the record as containing no evidence indicating that any of the plaintiffs have been prosecuted for violating the *federal* obscenity or child pornography statutes. Thus, the majority concludes, the plaintiffs cannot have an actual and well-founded fear of pretrial seizure because only those who produce or distribute unprotected material can reasonably fear application of the pretrial seizure provisions. I disagree.

The argument that the plaintiffs cannot have an actual fear of prosecution because they do not intend to violate the law is only sound if the line between that which is legal and that which is illegal is clear. In

The most significant problem is that the panel appears to be deciding the merits of the facial challenge to the post-conviction penalties in the guise of a ripeness analysis. *See* Majority ("Maj.") at 1188–1190. In *New York State Club Ass'n, Inc. v. New York City,* 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988), the Court first held that appellant had standing, then went on to address the merits of its facial challenge, saying that the challenge would succeed only if (1) there were no constitutional application of the statute or (2) if the statute were so overbroad that although constitutionally applied to plaintiffs, it would still unconstitutionally inhibit the protected speech of others. The panel, mistakenly I believe, reads this test as one for *entertaining* pre-enforcement facial challenges, not for deciding them.

I am also concerned about the majority's assertion that the use forfeiture cannot cause plaintiffs to engage in self-censorship any more than the ten year criminal penalty for child pornography already does. Maj. at 1191. An economist might well argue that because deterrence is a function of the probability of being caught and the magnitude of the punishment, increasing the latter will increase the deterrent effect of the statute. In addition, I question whether any plaintiff could ever prove that she produces less arguably (but not clearly) protected speech as the legislature increases the punishment.

Third, I do not read *Babbitt* as the panel does. The Court found there that because misstatement is "inevitable," the union reasonably feared prosecution for making false statements in a consumer publicity campaign even though the union intended to make only true statements. The union's pre-enforcement challenge to the consumer publicity provision was justiciable, the Court found, because the union would have to curtail its publicity campaigns to avoid prosecution. 442 U.S. at 301, 99 S.Ct. at 2310. I do not read the Court's decision as saying that false speech had to be tolerated to protect speech that "mattered," or that the false statements were arguably protected by the first amendment. Maj. at 1193.

4. For instance, an attachment to the Declaration of Mark C. Ellison, Vice President, Government Affairs, and General Counsel to the Satellite Broadcasting and Communications Ass'n of America, lists among films carried on the network, *Blue Lagoon,* which contains nudity shots of Brooke Shields, then a minor.

the case of obscenity and child pornography, it is not. The state may constitutionally prohibit as "obscene" works that, taken as a whole, "the average person, applying contemporary community standards" would find to appeal to the "prurient interest," and to "lack[ ] serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973) (internal quotations omitted). The federal child pornography statute prohibits the visual depiction of a minor engaging in "sexually explicit conduct," which includes any "lascivious exhibition of the genitals or pubic area." 18 U.S.C. §§ 2251, 2256(2)(E). Given the elasticity of terms like "prurient interest" and "lascivious," it is not unreasonable for the plaintiffs to fear that a federal prosecutor may believe that some of the sexually-oriented materials they distribute are unprotected and subject to immediate seizure. *Cf. PHE, Inc. v. Department of Justice*, 743 F.Supp. 15, 17 (D.D.C.1990) (retail distributors of sexually-oriented magazines and videotapes were threatened with federal obscenity prosecution in multiple districts throughout the country notwithstanding the fact that they "utilize[d] internal review procedures to guarantee that the materials they distribute do not violate the law"); *see also Babbitt*, 442 U.S. at 301–02, 99 S.Ct. at 2310 (entertaining pre-enforcement facial challenge to statute making it a crime to use deceptive publicity to discourage consumption of agricultural products even though the union that brought the suit disavowed any intent to propagate untruths in its consumer boycott campaigns; because "erroneous statement is inevitable in free debate," the union is "not without some reason in fearing prosecution for vio-

lation of the ban on specified forms of consumer publicity").

The fact that some of plaintiffs' members have been prosecuted and threatened with prosecution for violation of state obscenity laws is further indication that the plaintiffs' fear of pretrial seizure is reasonable and well-founded. *See* Declaration of Maxwell J. Lillienstein, General Counsel to the American Booksellers Ass'n, Inc., (formal criminal obscenity charges have been filed against at least two members of the American Booksellers Ass'n in the last several years, and others have been threatened with prosecution for selling *Playboy* and *Penthouse); see also* Declaration of Thomas Galvin, Executive Director of the American Library Ass'n, (some member libraries carry sexually-oriented publications, like *Playboy* and books of Robert Mapplethorpe's photography, that have been the subject of obscenity prosecutions). Because state and federal obscenity prosecutions are governed by the same constitutional standard, it is clearly reasonable for plaintiffs to fear that federal prosecutors will attempt to seize material that state prosecutors have deemed to be obscene.[5]

The majority and the government also contend that plaintiffs cannot have a reasonable and well-founded fear of pretrial seizure because the Attorney General has announced a policy of not seizing "presumptively protected First Amendment materials, bookstore assets or other assets prior to conviction" in obscenity and child pornography cases. Again, I am not persuaded. The "policy" obviously does not permanently bind the Attorney General or his successors. Additionally, it provides no defense in the event that a person is subject to pretrial seizure.[6]

---

**5.** It is also significant, I think, that although the government claims that the fact that plaintiffs have been subjected to state obscenity prosecutions does not indicate that they are likely to be the targets of federal obscenity prosecutions, the government has not stated that it thinks the state prosecutions were unfounded or that the plaintiffs will not be federally prosecuted for producing or distributing similar materials.

**6.** Moreover, the FBI has seized both expressive and nonexpressive materials when investigating alleged violations of the federal child pornogra-

phy laws. In a well-publicized case, for example, the FBI obtained a search warrant and raided the San Francisco home and studio of Jock Sturges, a photographer "known in the art world for pictures that feature both clothed and nude portraits of children, young girls and families." *Photographer's Life Put on Hold After Police Raid*, S.F. CHRON., May 25, 1990, at E3. In that raid, the FBI apparently seized "thousands of negatives and photographs ... as well as computer equipment, a photographic enlarger, high school diaries and darkroom light fix-

Finally, the plaintiffs' fear of pretrial seizure is exacerbated by the fact such seizure may occur without any advance notice. In addition, the pretrial seizure of expressive materials, the property used to produce them, and the proceeds derived therefrom, could effect a pretrial shutdown of a business—temporarily or permanently—even if that business could eventually prove that it had not produced or distributed obscenity or child pornography. *See* Declaration of Mark C. Ellison, Vice President, Government Affairs, and General Counsel to the Satellite Broadcasting and Communications Ass'n of America. On balance, the hardship to the plaintiffs of postponing judicial review militates in favor of entertaining their claims at this time. *Cf. Renne v. Geary,* — U.S. —, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991).

## III. MERITS

As the district court recognized, Supreme Court precedent affirms that several aspects of the pretrial forfeiture statutes at issue in this case are unconstitutional. First, the section of the civil forfeiture statute that authorizes seizure of expressive materials without a warrant as part of a search incident to arrest, 18 U.S.C. § 2254(b), clearly violates the holding of *Roaden v. Kentucky,* 413 U.S. 496, 506, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). Second, *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), dictates that the sections of the criminal and civil forfeiture provisions that authorize pretrial seizure of expressive material based on a showing of probable cause without an adversary judicial determination that the material is unprotected are unconstitutional. Because the Court's analysis *Fort Wayne Books* is relevant to many of these plaintiffs' constitutional challenges, a brief discussion of the case is warranted.

In *Fort Wayne Books,* a local Indiana prosecutor filed a civil action against three "adult bookstores," alleging that they had engaged in a pattern of racketeering activity by repeatedly distributing obscene books and films in violation of the state's Racketeer Influenced and Corrupt Organizations ("RICO") law. 489 U.S. at 50–51, 109 S.Ct. at 920–21. In addition to seeking the civil forfeiture of all the property used or derived from the racketeering activity, the prosecutor, pursuant to the state's Civil Remedies for Racketeering Activity ("CRRA") law, sought immediate seizure of the property subject to forfeiture. *Id.* at 51–52, 109 S.Ct. at 921. After an *ex parte* hearing, the trial court found that there was probable cause to believe that the bookstores were violating the RICO law and, consequently, authorized the sheriff to "padlock" and immediately seize "the real estate, publications and other personal property comprising each of the three bookstores." *Id.* at 52, 109 S.Ct. at 921. This was done, although no trial date for the civil forfeiture complaint was ever set. *Id.* After the Indiana courts upheld the CRRA statute and denied the bookstores' petitions to vacate the seizure orders, the Supreme Court granted *certiorari* and reversed. *Id.* at 52–53, 62, 109 S.Ct. at 921–22, 926.

The Court began by recognizing that its earlier decisions "repeatedly held that rigorous procedural safeguards must be employed before expressive materials can be seized as 'obscene.'" *Id.* at 62, 109 S.Ct. at 926. Thus, "[w]hile a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, the publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing." *Id.* at 63, 109 S.Ct. at 927. But the lack of an adversary hearing was not the only constitutional infirmity with the seizure; there was the additional problem that there had been no "determination that the seized items were 'obscene' or that a RICO violation ha[d] occurred." *Id.* at 66, 109 S.Ct. at 929 (emphasis in original). The lack of such a

---

tures." *Id.* Such incidents further indicate that plaintiffs' fears of pretrial seizure are

warranted.

determination was deemed fatal because mere "probable cause to believe that there are valid grounds for seizure is insufficient to interrupt the sale of presumptively protected books and films." *Id.*

The two identical constitutional defects in the Indiana civil forfeiture statute are found in the criminal and civil forfeiture statutes at issue here: (1) they authorize seizure of expressive material based on only a finding of probable cause to believe the material is unprotected; and (2) they allow a court to issue a seizure order without holding an adversarial hearing. Therefore, for the reasons stated in *Fort Wayne Books*, these sections of the Act's civil and criminal forfeiture provisions are unconstitutional.[7]

The Attorney General asserts that the pretrial seizure sections of the civil forfeiture provision can be salvaged by adding a requirement that judicial forfeiture proceedings be commenced within 14 days of seizure and completed within 60 days thereafter. I disagree. After adding such requirements for prompt judicial review, the Supreme Court in *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), did uphold a statute authorizing customs agents to seize, before a judicial hearing, allegedly obscene material imported into the United States. But the unqualified language in *Fort Wayne Books* that expressive materials "may not be taken out of circulation completely until there has been a determination of obscenity *after an adversary hearing*," 489 U.S. at 63, 109 S.Ct. at 927 (emphasis supplied), may indicate that the "seize and then adjudicate" customs procedure upheld as reasonable in *Thirty-Seven Photographs* would not be found to be

reasonable when applied to expressive materials of periodical distributors already in the country.

I need not resolve that constitutional question, however, because I do not believe the civil forfeiture statute can be construed as containing the requirement that the Attorney General commence forfeiture proceedings within 14 days and that the proceedings be completed within 60 days. First, if the value of the merchandise seized does not exceed $500,000, the statute (by incorporating the customs seizure provisions, 19 U.S.C. §§ 1607–1609) authorizes the government to dispose of the seized material unless the *owner*, not the government, initiates administrative proceedings for its return. *See* 18 U.S.C. § 2354(d). This is at odds with established precedent requiring the *government* to carry the burden of commencing proceedings and proving that the expressive material is unprotected. *See, e.g., Blount v. Rizzi*, 400 U.S. 410, 417–18, 91 S.Ct. 423, 428–29, 27 L.Ed.2d 498 (1971). Second, even if the court, in contravention of this provision, were to place the burden of initiating administrative and judicial forfeiture proceedings on the government, the civil forfeiture statute (by incorporating 19 U.S.C. § 1621 of the customs laws) would still authorize the government to commence a judicial forfeiture action within five years after the discovery of the alleged offense. As the Supreme Court recognized in *United States v. $8,850*, 461 U.S. 555, 563 n. 13, 103 S.Ct. 2005, 2011 n. 13, 76 L.Ed.2d 143 (1983), the five-year statute of limitations in 19 U.S.C. § 1621 makes it "impossible" to read a 14–day statute of limitations into the customs statutory scheme as the Court did in *Thirty-Seven Photographs*. And without such a

---

**7.** The district court in this case also concluded that because "the seizure of non-expressive assets—such as printing presses, bank accounts, etc.—of a business engaged in distributing expressive material *may* determine whether the business is able to continue functioning or not, ... pretrial seizure of non-expressive material *ex parte* from a business engaged in distributing expressive material also is unconstitutional." 713 F.Supp. at 484–85 n. 19 (emphasis supplied). Although the first amendment protects the dis-

tribution of expressive material, *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959), I am not convinced that pretrial seizure of nonexpressive assets of a business involved in the distribution of expressive material must necessarily violate the first amendment irrespective of the effect on the business. I would, therefore, decline to consider the constitutionality of the provisions authorizing the pretrial seizure of nonexpressive material until such a pretrial seizure occurs.

requirement that the government promptly commence judicial forfeiture proceedings to determine the legality of the seizure, the seizure is obviously unconstitutional. *See Thirty–Seven Photographs*, 402 U.S. at 367, 91 S.Ct. at 1403; *Freedman v. Maryland*, 380 U.S. 51, 58–89, 85 S.Ct. 734, 738–39, 13 L.Ed.2d 649 (1965).

Finally, I would reverse the district court's order declaring facially unconstitutional the provisions in the criminal forfeiture sections of the Act that permit the court to issue protective orders or to require the defendant to execute a performance bond to preserve the availability of property subject to post-conviction forfeiture. *See* 18 U.S.C. §§ 1467(c), 2253(c). As the Attorney General points out, these provisions authorize the district court to issue orders that protect against the pretrial dissipation of forfeitable assets by obscenity and child pornography defendants but do not prohibit the distribution of expressive materials or force the defendants to go out of business. Such orders do not impede the distribution of presumptively protected material and, therefore, they are not impermissible prior restraints. *See, e.g., Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135, 137–38 (9th Cir.1980), *aff'd mem.*, 454 U.S. 1022, 102 S.Ct. 557, 70 L.Ed.2d 468 (1981); *United States v. Alexander*, 736 F.Supp. 968, 974–75 (D.Minn. 1990). Because many protective orders could be issued under these sections without violating the first amendment, I would reject the plaintiffs' facial challenge and leave any constitutional problems raised by particular protective orders to be addressed when and if they arise.