**AMERICAN LIBRARY ASSOCIATION, et al., Plaintiffs,**

v.

**William BARR, Attorney General of the United States, et al., Defendants.**

**Civ. A. No. 91–0394.**

United States District Court, District of Columbia.

May 26, 1992.

---

Bruce J. Ennis, David W. Ogden, Ann M. Kappler, Diedra J. Brown, Jenner & Block, Washington, D.C., for plaintiffs.

Maxwell J. Lillienstein, New York City, for plaintiff ABA.

Steven Bierman, Sidley & Austin, New York City, for plaintiff CPDA.

Michael D. Remer, Shanks, Davis & Remer, New York City, for plaintiff ASMP.

Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Vincent M. Garvey, Thomas Peebles, Attys., Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

Nat'l Family Legal Foundation, American Family Ass'n, Morality in Media, and Focus on the Family, amicus curiae.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case comes before the Court on Plaintiffs' and Defendants' Cross Motions for Summary Judgment and Defendant's Motion for Judgment on the Pleadings. Fed.R.Civ.P. 56, 12(c). The Plaintiffs in this case are a group of media, and trade associations, as well as individual artists, publishers and photographers.

Plaintiffs have brought this action challenging the constitutionality of the Child Protection Restoration and Penalties Enhancement Act of 1990, 18 U.S.C. § 2257 ("Act"). The Court finds that the Act, in conjunction with the regulations promulgated for its enforcement, in part runs afoul of the First Amendment. This Court will therefore declare unconstitutional and enjoin enforcement of the Act as it applies to production and distribution of visual images of adults.

## BACKGROUND

### A. Procedural History

The original Child Protection and Obscenity Enforcement Act was passed by Congress and signed into law on November 18, 1988. ("1988 Act"). That Act created a wide range of criminal enforcement tools to enable federal prosecutors to combat the serious problem of child pornography.[1] Most of those tools remain in effect today and are helpful to federal law enforcement

---

1. Those tools include the criminalization of possession with intent to distribute obscenity that crossed state lines, 18 U.S.C. § 1466, criminalizing possession with intent to distribute child pornography on government property, 18 U.S.C. § 1460, applying RICO to child pornography, 18 U.S.C. § 1961, and criminalizing transportation of a minor across state lines for use in child pornography, 18 U.S.C. § 2251A, among others.

**414**

efforts to end the serious harms that befall children who are the victims of such pornography. *Cf. New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

The one aspect of the Act that did not remain in effect after its passage was the extensive record keeping requirements imposed upon all producers of visual depictions of sexually explicit conduct. Judge Revercomb of this Court struck down those record keeping provisions as violative of the first amendment. *See American Library Association v. Thornburgh,* 713 F.Supp. 469 (D.C.Cir.1989), *vacated as moot* 956 F.2d 1178 (D.C.Cir.1992) (*"ALA I"*). Congress then passed the statute at issue in this case and Plaintiffs brought an action challenging the new record keeping requirements as overly burdensome as applied to protected rights of expression under the first amendment.

Plaintiffs initially appeared before the Court on a motion for a temporary restraining order on February 11, 1991. At that time, this Court expressed its concern over the scope of the Act. The Court believed that the plain language of the Act, without regulations narrowing the breadth of material covered, would have resulted in burdening a wide range of admittedly constitutionally protected expression because the Act made absolutely no distinction based on the age of the model. *See* Transcript of Motion for TRO on Feb. 11, 1991 at 20–21 ("Tr."). The Act, which was signed into law on November 29, 1990, also required that "the Attorney General ... prepare the initial set of regulations required or authorized by [the Act] within 60 days of the enactment of [the] Act." [2] That 60–day period expired prior to February, 1991 without any regulations being prepared.

This Court believed that before ruling on the constitutionally of the Act, the Attorney General should have the opportunity to narrow the statute's scope because it impacted on the first amendment. In lieu of an injunction, the parties entered into a Stipulation on February 26, 1991 that the Act would not be enforced until one month

after the final regulations were published. The final regulations were published on April 24, 1992, and now both parties have moved for summary judgment based upon the Act and the regulations.

### B. *The Act and the Regulations*

The Act, considered with the regulations, imposes extensive record-keeping and labelling requirements on the producers of visual images which depict actual sexually explicit conduct, *regardless of the age of the model.* The government concedes, as it must, that the Act applies to expression which is protected under the First Amendment.

#### 1. Scope and Penalties

Under the Act, it is a felony punishable by up to two years imprisonment along with a substantial fine for a "producer" of material depicting "actual sexually explicit conduct" to fail to create and maintain the records required by the Act. For a second offense there is a mandatory minimum two year prison sentence. There is no *scienter* requirement for a producer failing to create or maintain the records required by the Act. Failure to keep the required records is a felony regardless of the age of the model. The Act applies to producers without regard to a transgressor's knowledge of his or her violation of the Act's requirements. By its own terms, however, none of the records kept as required by the Act can be used substantively against any person directly or indirectly as evidence in any prosecution for any violation of the law, including child pornography laws. Sec. 311(d)(1).

The Act also regulates distribution of covered material. Under the Act it is a felony to knowingly distribute any material which contains a visual image containing actual sexually explicit conduct unless the material bears a label describing where the required records are located.

The Act applies to distribution of material created by foreign producers. Because foreign producers are not subject to the

[2]. § 312(1).

Act's record keeping requirements, the Act will operate to ban distribution of a wide range of foreign-produced, sexually explicit material. That ban would operate regardless of the actual or apparent age of the model depicted.

### 2. Record Keeping Requirements

The wide scope and severe penalties imposed by the Act are exacerbated by the Act's burdensome record keeping provisions. The Act and regulations require that "primary" producers—or those who actually film or photograph a visual depiction of sexually explicit conduct—view each model's original photo identification documents and keep a record of each model's name and date of birth regardless of the age of the model. 28 C.F.R. § 75.2. In addition, a primary producer must ascertain every alias, nickname, stage name or professional name of each model engaged in sexually explicit conduct. All such names must be listed in the retained records and these records must be cross indexed to be retrievable by every alias. 28 C.F.R. § 75.3. In addition, the records must be cross-indexed to be retrievable according to the title or other identifying feature of the book or other visual medium. *Id.* Many of the "producers" in the Plaintiffs' organizations are photographers or artists operating on their own or in small studios. *See* Declaration of Charlotte R. Murphy at ¶ 58; Declaration of Hank Londoner at ¶ 10–12.[3] The regulations at issue in this case can impose insurmountable burdens on such artists.

"Secondary" producers—or those who produce, assemble, publish, duplicate, reproduce, or reissue material containing a visual depiction of actual sexually explicit conduct—are also producers within the meaning of the Act and subject to the same regulations and penalties. *See* 28 C.F.R.

§ 75.1(c)(2). These producers often have absolutely no direct contact with the models. *See* Declaration of David J. Meyerson at ¶ 1, 7. In addition, many times there is a chain of intermediate, secondary producers between a given producer and the primary producer. *Id.* While the regulations do allow a secondary producer to keep "copies" of the required records, the regulations require that such copies can only be obtained from the primary producer. *See* 28 C.F.R. § 75.2(b). Each secondary producer must keep the name and address of the primary producer. *Id.* Thus, not only must numerous duplicate records be kept for the same visual depiction, but each secondary producer is required to obtain his or her copy only from the primary producer.

Finally, each producer is required to maintain all the required records for as long as the producer remains in business. 28 C.F.R. § 75.4. If the producer ceases to carry on business, a custodian must be named and the records must be maintained for an additional five years. *Id.* Failure of any producer or distributor to comply with these burdensome regulations is a felony regardless of the age of the model.

## DISCUSSION

### A. Standing

 The Court begins by noting the areas in this case which are not disputed. First, the government has conceded that the National Association Of Artists' Organizations ("NAAO") and National Campaign ("NCFE") have standing to bring this action for declaratory and injunctive relief.

The NAAO and the NCFE represent artists and distributors who are primary producers, secondary producers, and distribu-

---

**3.** One example of how the Act's requirements would impose virtually insurmountable burdens on protected expression is in the case of "appropriationist" artists. *See* Murphy Declaration at ¶ 8–22. These artists create their works by photographing sexually explicit materials from other sources and combining those pictures with other images to portray those images in new and different ways. *See Id.* at Attachment 1, 2

*Aperture: The Body in Question;* Nan Goldin, *The Ballad of Sexual Dependency.* These artists have no contact with the primary producer or model. Moreover, they often produce strong feminist or political messages which might be critical of that producer so that it would be extremely difficult for these artists to be able to meet the Act's strict record keeping requirements and avoid committing a felony.

tors of images depicting actual sexually explicit conduct. Their standing in this case covers the entire spectrum of the Act and the regulations. Therefore, this Court need not address the issue as to whether the other Plaintiffs have standing. *See U.S. Dep't of Labor v. Triplett,* 494 U.S. 715, 110 S.Ct. 1428, 1431, 108 L.Ed.2d 701 (1990); *National Federation of Federal Employees v. U.S.,* 905 F.2d 400, 403–404, n. 4 (D.C.Cir.1990); 13A C. Wright, A. Miller & E. Cooper § 3531.15 nn. 22–24 and accompanying text (1984 ed. & 1992 Supp.) ("If there are several plaintiffs, it is often sufficient to determine that some have standing, and then bypass the question whether others also have standing.").[4] Therefore, this Court must reach the merits of the Plaintiffs' challenge to the Act's constitutionality.

### B. Level of Judicial Scrutiny

It is also undisputed by either party that the government has a compelling interest in attempting to eradicate the evils associated with child pornography. *See New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Since the harms inflicted upon the victims of such pornography are substantial, the government is to be lauded for its many successful efforts to protect its youngest citizens.

*See* Attorney General's Comm'n on Child Pornography, Final Report (1986). Plaintiffs join the government in its condemnation of child pornography and steadfastly maintain that they only use adult models when depicting the type of graphic conduct covered by the Act.

It is also beyond dispute, however, that many of the images which Plaintiffs do produce and distribute, and which are subject to the Act's requirements, are not only legal but constitutionally protected. Those images involve adults and have nothing to do with child pornography. As the district Court in *ALA I* correctly observed:

"It is worth noting at the outset that this is not a typical pornography case, in which the task is to determine where the line is to be drawn between protected first amendment material and that which may be prohibited. Here, it is clear that much material that is protected by the First Amendment will be subject to the record-keeping requirements ..."

*ALA I* 713 F.Supp. at 473, *vacated as moot* 956 F.2d 1178 (D.C.Cir.1992). This Court must construe the Act as a statute regulating expression protected by the First Amendment.

■ Plaintiffs and Defendants disagree as to the level of scrutiny which this Court

---

4. In addition to the government's concession, this Court has reviewed the record and has found ample evidence that the Plaintiffs in this case produce or distribute material which could reasonably be thought to contain depictions of actual sexually explicit conduct. *See* Declaration of David Myerson and Attachment 1, 2; Declaration of Suze Randall at ¶ 3; Declaration of Hank Londoner at ¶ 3. Thus, if the government is permitted to enforce the Act many of the Plaintiffs will be immediately required to comply with its record keeping requirements. They will be directly injured by the Act.

In addition, the government mischaracterizes Plaintiffs' challenge to the Act as a 'facial' challenge. The Plaintiffs in this case produce and distribute visual images containing actual sexually explicit conduct of *adults*. Their challenge, and this Court's ruling, is limited to the application of the Act to depictions of those over 18. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503–504, 105 S.Ct. 2794, 2801–2802, 86 L.Ed.2d 394 (1985). Thus, Plaintiffs' case is unlike the situation faced by the Court of Appeals in reviewing the forfeiture provisions in

*ALA I.* 956 F.2d 1178. In addition, unlike *ALA I* the Plaintiffs will suffer immediate injury in this case once the Act's record keeping requirements become effective. No jury conviction or prosecutorial discretion can relieve them of the immediate burdens which compliance will bring.

Plaintiffs are also within their rights to bring this preenforcement challenge to the Act. *See Brockett,* 472 U.S. at 504, 105 S.Ct. at 2802. The government does not contest that two of the Plaintiffs in this action will be subject to the Act's requirements and possible serious penalties for noncompliance. Especially when important first amendment rights are involved a citizen is not required "to take significant and costly compliance measures or risk criminal prosecution." *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988). *See also Babbit v. United Farm Workers,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (one challenging constitutionality not "required to await and undergo a criminal prosecution as the sole means of seeking relief.").

must apply in evaluating the constitutionality of the Act. Plaintiffs argue that the Act must withstand the strict scrutiny which the Court must apply to a statute which regulates protected expression based on its content. A statute can withstand such scrutiny only if it is "necessary to serve a compelling state interest and is narrowly drawn to achieve that end." *Simon & Schuster v. New York Crime Victims Bd.*, —— U.S. ——, 112 S.Ct. 501, 509, 116 L.Ed.2d 476 (1991); *Riley v. National Fed'n of the Blind, Inc.*, 487 U.S. 781, 796, 108 S.Ct. 2667, 2677, 101 L.Ed.2d 669 (1988); *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *Talley v. California*, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960).

■ Defendants maintain that the Act should be evaluated as a reasonable 'time, place, and manner' restriction on protected expression and need only satisfy the three part test which applies to such regulation. Such statutes are constitutional if they 1) are not justified based on the content of the expression regulated, 2) are "narrowly tailored to serve a significant governmental interest," and 3) leave open ample alternative channels for communication. *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984); *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).[5] This Court need not determine which level of scrutiny is appropriate in this case, however, because the Act must be struck down even under the less exacting test propounded by the government.

## C. The Act As Applied to Plaintiffs Violates the First Amendment

The government, in its brief, asserts that the goal of the Act's record-keeping requirements is "to prevent pornographers from evading the federal ban on the use of minors in sexually explicit material by professing ignorance as to the age of the performer." Defendants' Memorandum In Support of Motion for Summary Judgment at 2. ("Def.Mem."). Because the government's interest is significant in this case, the sole questions before this Court are whether the means chosen in the statute are narrowly tailored to that interest and whether the Act leaves open ample alternative channels for communication. The answer to both questions must be in the negative.

### 1. Narrowly Tailored Requirement

■ Boiled down to its essence the Act's primary flaw is that it applies to all depictions of actual sexually explicit conduct regardless of the age or even the apparent age of the model. Thus, the Act sweeps equally under its scope visual depictions of people who are sixteen, twenty-five, forty and sixty years old. While the government has every right to regulate—or even ban—such depictions of underaged persons, it does not even bear a rational relationship to its goal to regulate equally all sexually explicit art regardless of the model's age, even when that age is known. The government has used a dragnet approach for deal-

---

**5.** The government argues that lesser scrutiny is justified because sexually explicit material is *per se* entitled to lesser protection under the first amendment. It is worth noting, however, that a wide variety of expression will be affected by the Act. Some of the expression affected will be the type of material which might fall into the category of indecent expression, which has been recognized as protected to a lesser degree. *See Barnes v. Glen Theatre, Inc.*, —— U.S. ——, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality opinion) (first amendment applied to nude dancing).

Plaintiffs have demonstrated, however, that the Act will also apply to many modern artists who use graphic sexual images combined with words to send powerful and highly political messages. *See e.g.,* Motion for Preliminary Injunction at Exhibit 1, Nan Goldin, *The Ballad of Sexual Dependency;* Declaration of David Meyerson at Exhibit A, *Penthouse,* September, 1990 at 148 "Cincinnati: City Under Siege" (article containing photographs by Robert Maplethorpe); *see also Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (certain sexual expression, especially if political, may be entitled to highest level of protection). Thus, the Act not only fails to distinguish between expression which is protected and that which is unprotected, but is fails to grant any different status to speech which is entitled to the highest degree of protection under the first amendment.

ing with important and delicate issues deserving of the most precise enforcement effort.

Indeed, the Plaintiffs have conceded the validity of the Act were it to be applied only to those who used models under 18. *See e.g.,* Cal.Labor Code § 1309.5(a) & (b) (1990). The vast range of protected expression which falls under the Act's regulatory sweep alone requires it be found unconstitutional as applied to depictions of adults engaged in sexually explicit conduct.

So tenuous is the relation between the asserted government interest in this case and the statutory means of accomplishing that interest, that one wonders what Congress had in mind in bringing adult models into the Act's coverage. The terms of the Act itself preclude any use—whether direct or indirect—of recorded material in a child pornography prosecution. Thus, none of the records compiled by producers of the covered images, whether adults or children, can be used to aid in the fight against child pornography. Indeed, should the Act be read to establish something akin to "use immunity" for such material, the prosecutor of a child pornography case will be shouldered with the extra burden of showing that the prosecution is not tainted by any of the records kept in conjunction with the Act. *See ALA I* at 479. Second, although the government seeks to avoid the 'harm' that occurs when a pornographer "profess[es] ignorance as to the age of the performer," Def.Memo. at 2, knowledge of the age of the model is not a required element in a prosecution under the Child Protection Act. *See United States v. United States Dist. Court for Cent. Dist. of Cal.,* 858 F.2d 534 (9th Cir.1988).

This Court repeatedly questioned the government concerning the reason for subjecting all ages of models to the regulations and the Act. The government could give no valid rationale for the Act's wide scope. Thus, the Act is far from being an act narrowly tailored to achieve a significant legislative goal. It is more akin to off-the-rack legislation concocted to suit a government interest made from whole cloth. Such a regulation is unbefitting of a law affecting protected expression in our society.

### 1. Alternative Avenues of Expression

■ The substantial burdens imposed by the Act will stifle much of Plaintiff's protected expression. First, the penalties imposed for failing to keep the required records, even regrading protected expression, are severe and are imposed without any *scienter* requirement. Such dire consequences will surely chill expression. "Freedoms of expression require breathing space." *Hustler Magazine,* 108 S.Ct. at 880. Even when the government attempts to criminalize unprotected expression the Supreme Court has noted that strict liability cannot be imposed if it will "have the collateral effect of inhibiting the freedom of expression, by making the individual more reluctant to exercise it." *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959) (struck down criminal liability for possession of obscene book). In this case, however, the chilling effect is even more direct because the Act directly regulates protected expression. Thus, taking the risk that such serious penalties will not chill the expression of Plaintiffs is not acceptable under the first amendment.

Second, the record keeping requirements themselves, aside from the penalties, are extremely burdensome. First, the Act will effectively ban foreign produced images of sexually explicit conduct. Because foreign producers will not be subject to the Act's record keeping requirements, domestic distributors and secondary producers will be unable to use or distribute such material without committing a felony. In addition, as discussed above, the Act requires everyone in the entire chain of commerce to keep cross-referenced records concerning the same visual image. For many smaller artists or producers well down the chain this requirement may be entirely impossible to meet.

Defendants respond that such record keeping requirements are not uncommon in many other settings which are routinely regulated by the government and that, like

the Act's restrictions on distributors, private parties are often relied on to enforce such restrictions. Def.Memo. at 38–41 (citing 8 U.S.C.A. § 1324a (Immigration Control Act); 29 U.S.C. § 657 ("OSHA")). Those examples are inapplicable to this case. If the first amendment means anything at all, it prevents government from regulating protected expression the same way it regulates working conditions or immigration. That is true because, like immigration, "there is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of freedom of speech stand in the way of imposing a similar requirement on the bookseller." *Smith*, 361 U.S. at 152–53, 80 S.Ct. at 218.

Finally, the Act is overly burdensome because it will invade the privacy of adult models and discourage them from engaging in protected expression. That, in turn, will limit the creators' and distributors' ability to engage in protected expression. Many of the artists and adult models engaged in sexually explicit visual imagery have an interest in maintaining their anonymity. Exposure of their true names, aliases, and addresses could subject them to stigmatization, harassment and ridicule from others.

The Supreme Court has "consistently refused to allow government to chill the exercise of constitutional rights by requiring disclosure of protected, but sometimes unpopular, activities." *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 767, 106 S.Ct. 2169, 2182, 90 L.Ed.2d 779 (1986). Anonymity may be especially important when protected expression is involved. *See Talley v. California*, 362 U.S. 60, 64–65, 80 S.Ct. 536, 538–539, 4 L.Ed.2d 559 (1960) (statute criminalizing distribution of handbills without identifying speaker); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Thus, under the Act's provisions adults engaging in unpopular but protected expression are required to affirmatively come forward and subject themselves to the possibility of public harassment. The resulting invasion of their privacy and chill on their expression would result in their silence. Therefore, this Court finds that the burdens imposed by the Act do not leave ample alternative routes of expression.

## CONCLUSION

The Act places unconstitutional burdens on protected expression. Therefore, this Court must declare the record keeping and labeling provisions of the Act unconstitutional and enjoin their enforcement as applied to producers and distributors of the covered visual images of adults. The Act may not be applied to Plaintiffs' and other producers of such images who use due diligence to satisfy themselves that the subjects in these images are over 18 years of age.

What the drafters of the legislation have done is to create a dragnet that blankets all engaged in the depiction of sexually explicit conduct. The stated purpose of the Act is to deal with child pornography, i.e. sexually explicit activities of underaged models. If the Act's burdensome requirements were limited to records applicable to such individuals, it would be constitutional. It becomes impermissible only because the Act reaches all individuals engaged in sexually explicit conduct regardless of age. Those using adult models, represented by Plaintiffs in this case, must be excluded from the reach of the Act. Accordingly this Court will enjoin enforcement of Act as it applies to records that must be kept pertaining to images of adult models. The Act, however, is constitutional as applied to images of models under 18 years of age.

A separate Order accompanies this Opinion.

## ORDER

Upon consideration of Plaintiffs' and Defendants' Cross Motions for Summary Judgment, oral argument, and the entire record herein, it is hereby

ORDERED that the Plaintiffs' Motion for Summary Judgment is GRANTED and it is

420

FURTHER ORDERED that the Defendants' Motion for Summary Judgment is DENIED and it is

DECLARED that the record-keeping and labeling provisions of the Child Protection Restoration and Penalties Enforcement Act of 1990 as applied to producers and distributors of any material that contains depictions of people under 18 years of age is CONSTITUTIONAL and it is

DECLARED that the record-keeping and labeling provisions of the Child Protection Restoration and Penalties Enforcement Act of 1990 as applied to producers and distributors of any material who have satisfied themselves after due diligence that such material does not contain depictions of people under 18 years of age is UNCONSTITUTIONAL and it is

FURTHER ORDERED that Defendants are enjoined from enforcing the record-keeping and labeling provisions of the Child Protection Restoration and Penalties Enforcement Act of 1990 with respect to producers and distributors of any material who have satisfied themselves after due diligence that such material does not contain depictions of people under 18 years of age.